# EXHIBIT C

| | |
|---|---|
| **From:** | Langer-Osuna, Rafael M. |
| **Sent:** | Monday, September 23, 2019 4:34 PM |
| **To:** | Joshua G. Jones |
| **Cc:** | Meckes, Joseph A. |
| **Subject:** | Friday's Meet and Confer |

Dear Josh,

This email summarizes my recollection and understanding of Friday's meet and confer call. This email also follows up on a few items raised.

Bell's Response to RFP 1:
With respect to your objections to producing documents related to other litigation pursued by Dr. Bell, you responded that such materials were voluminous and publicly available.

Bell's Response to RFP 2:
With respect to the depositions, however, you agreed that those were not publicly available and you indicated you would speak to your client about those. When I pointed out that Mr. Reading stated he had reviewed deposition transcripts in preparing his initial report, you indicated that you knew he had not looked at deposition transcripts. Nonetheless, you confirmed you would check with your client on Thursday about producing those.

Bell's Response to RFP 4:
You agreed to look for and provide your client's contract with Amazon but you did not believe that there was any settlement agreement which allows a party to upload an image to the internet. You indicated that you would confirm this.

Bell's Response to RFP 5:
You indicated that Dr. Bell's primary objection was that the requested materials were not proportional to the matter at hand. I then asked if Dr. Bell could simply provide licenses as to only the specific image that Dr. Bell attached to this Complaint. You stated that this image itself had been circulating for years, maybe as much as ten years but at least as long as four or five years. As a result, there have been hundreds of letters just with respect to this image. I explained that I nonetheless believed discovery of those letters would be proportional. A starting point towards a compromise, or, at any rate, an analysis of the burden, would begin by finding out how many such letters had been issued and over what period of time. You offered to seek this information from your client.

Bell's Response to RFP 7:
You had largely the same objections to this RFP as to RFP 5. You indicated that you would check to see whether and how the image attached to Dr. Bell's complaint here had been licensed.

Bell's Response to RFP 20:

You indicated that the production of confidential settlement and license agreements required entry of a protective order.  I indicated that this was acceptable to OCPP. You indicated you would circulate a draft protective order.

Bell's Response to Interrogatory 3:
You indicated that you would correct this response to provide the relevant Bates numbers.  Are the relevant Bates numbers Bell000597-599? If so, please confirm by email and then have your client update his interrogatory responses when you speak with him on Thursday.

Bell's Response to Interrogatory 5:
You indicated that, despite the objection to stating all facts in response to this interrogatory, your response to this interrogatory was complete, despite my questioning.  I then asked if the support for Dr. Bell's statement that the post was put up again after it was taken down was the same document as the response to interrogatory number three.  You indicated you would confirm.

Bell's Response to Interrogatory 6:
You confirmed that you believed that this response, like the response to Interrogatory 5, too was complete.  You maintained that posting the image at issue without paying for it was sufficient to confer a benefit on OCPP, without anything else.

Bell's Response to Interrogatory 7:
You indicated that this response, like the responses to Interrogatories 5 and 6, was also complete.  You further indicated that Dr. Bell takes the position that using the words "Winning Isn't Normal" is sufficient to invoke his name and thereby create an impression of Dr. Bell's affiliation or sponsorship.

Bell's Response to Interrogatory 10:
You indicated that you would get back to me with this information after discussing it with Dr. Bell.

Bell's Response to Interrogatory 11:
You indicated that you would have Dr. Bell be more definitive in his response to this interrogatory about efforts taken after January 1, 2014.

With respect to your issues with OCPP's discovery responses, you indicated that you believed the responses to the RFAs were deficient because the RFA responses did not clearly indicated whether RFAs were denied or admitted.  You further indicated that the interrogatory referencing those RFAs was correspondingly deficient because it was not clear which RFAs were denied and which were admitted.  I indicated that I thought the explanations were clear but offered to clarify what was admitted and what was denied by using the words "admitted" or "denied" (or admitted/denied in part).  You then indicated we could further discuss the interrogatory responses on that topic, if necessary.  Finally, in response to your questions about the requests for production, I confirmed that OCPP had conducted its reasonable search and produced what it located as a result of that search.

As to depositions, I indicated that I believed that I needed to take Dr. Bell's deposition before ascertaining whether Mr. Reading's deposition would be needed.  I indicated that Dr. Bell should be deposed in person in the Bay Area.  Consistent with your prior position on this point, you indicated that we were at an impasse on this issue.  I indicated I would provide you with a discovery letter brief on this topic.

Finally, we confirmed that neither side's discovery requests were meant to encompass, at this time, conversations or communications with counsel in this litigation.  We thus agreed that privilege logs were not necessary to preserve the attorney-client privilege as to any of the extant discovery requests.

Regards,


**Rafael M. Langer-Osuna**
Partner
Squire Patton Boggs (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

T  +1 415 393 9806
O  +1 415 954 0200
F  +1 415 393 9887

**rafael.langerosuna@squirepb.com** | squirepattonboggs.com