Squire Patton Boggs (US) LLP
Joseph A. Meckes (State Bar # 190279)
joseph.meckes@squirepb.com
Rafael M. Langer-Osuna (State Bar # 300948)
rafael.langerosuna@squirepb.com
Melanie P. Cockrum (State Bar # 323685)
melanie.cockrum@squirepb.com
275 Battery Street, Suite 2600
San Francisco, California  94111
Telephone:     +1 415 954 0200
Facsimile:     +1 415 393 9887

Attorneys for Defendant
THE OAKLAND COMMUNITY POOLS
PROJECT, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEITH F. BELL, PH.D.,<br><br>Plaintiff,<br><br>v.<br><br>THE OAKLAND COMMUNITY POOLS PROJECT, INC.; and Does 1 to 20,<br><br>Defendants. | Case No. 4:19-cv-01308-JST<br><br>**THE OAKLAND COMMUNITY POOLS PROJECT, INC.'S REPLY IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>Date:     April 1, 2020<br>Time:     2:00 p.m.<br>Room:    6<br>Judge:    Hon. Jon S. Tigar |

Case No. 4:19-cv-01308-JST
THE OAKLAND COMMUNITY POOLS PROJECT, INC.'S REPLY ISO CROSS-MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

Plaintiff Keith Bell's ("Plaintiff" or "Bell") brief in opposition to defendant Oakland Community Pools Project, Inc.'s ("OCPP") cross-motion for summary judgment ("XMSJ") does nothing more than confirm that he has no legitimate grounds to oppose OCPP's motion.

Plaintiff's claim for copyright infringement is barred by the statute of limitations. Admitting that he knew about the allegedly infringing post more than three years before commencing suit, Plaintiff argues—contrary to the law—that merely posting something on Twitter commences a "continuing infringement" that would permit a plaintiff to commence suit decades after discovering an infringing internet post. Plaintiff offers absolutely no rational evidentiary or legal support for this position. Plaintiff's claim accrued when he discovered the allegedly infringing post. He waited more than three years to sue. His claim is barred.

Plaintiff's claim for trademark infringement fares no better. Other than noting that a single post on OCPP's Twitter feed quoted the phrase "Winning isn't normal" from Plaintiff's book, Plaintiff points to no evidence that OCPP ever used that phrase in connection with any goods or services and no evidence of any likelihood of confusion. Plaintiff's argument that the Court can simply assume a likelihood of confusion—as though OCPP was somehow offering counterfeit services—does nothing but illustrate the lack of any supporting evidence and the frailty of Plaintiff's claim. OCPP is entitled to summary judgment on this frivolous claim as well.

## II. PLAINTIFF'S CLAIM FOR COPYRIGHT INFRINGEMENT IS BARRED BY THE THREE-YEAR STATUTE OF LIMITATIONS

There is no question that any claim for copyright infringement accrued in January 2016, when it is undisputed that Plaintiff Bell discovered the allegedly infringing Twitter post. *See* XMSJ at 3:24–4:5. OCPP swim coach Rolandas Gimbutis has testified that he posted the allegedly infringing "WIN Passage" on Twitter in December 2015 and then forgot about it until he received a letter from Plaintiff's counsel in May 2017, at which time he immediately deleted the post from Twitter. ECF 57-1 ¶¶5–6. In other words, OCPP did nothing but post the allegedly infringing passage once in 2015 and then remove the passage from Twitter after receiving Plaintiff's demand to do so.

There is absolutely no evidence that OCPP ever reproduced or copied the offending passage after posting it in December 2015 and there is absolutely no evidence that OCPP ever used the offending passage to promote its business. Plaintiff asks the Court to assume there were additional activities because the passage was publicly available on Twitter and because OCPP's "website which had embedded the infringing post therein was archived and still publicly available, on March 28, 2016." ECF 60 at 4:21–23. Plaintiff's use of the passive voice is telling as there is no evidence that OCPP archived its website on "archive.today" or anywhere else.[1]

Plaintiff tries to make much of the fact that Twitter is a "dynamic" platform, but does not explain how this is relevant. ECF 60 at 4:14–20. Contrary to Plaintiff's contentions, there is no evidence that OCPP somehow used the allegedly infringing passage to support its business. There is no evidence anyone (other than Mr. Gimbutis and Plaintiff) ever even saw it. But even if there were, so what? The only "act" of OCPP was to post to Twitter—to the extent other people (not OCPP) accessed the passage, that is not an act of infringement by OCPP. Plaintiff certainly cites no law supporting such a proposition.

As demonstrated by the wealth of authorities cited in OCPP's XMSJ, the law is to the contrary. In fact, Plaintiff's theory that the mere availability of online posts creates an ongoing infringement would permit a plaintiff like Bell to discover an allegedly infringing content and then wait decades to make a claim—so long as the content remains available online. As the court held in *Chelko v. Does JF Rest., LLC*, No. 3:18-CV-00536-GCM, 2019 U.S. Dist. LEXIS 121590 (W.D.N.C. July 22, 2019), "[i]f every access of a copyrighted work on a website establishes a new claim for infringement, as Plaintiff contends, the statute of limitations becomes obsolete for the internet."[2]

---

[1] Although Dr. Bell denied doing so at deposition, OCPP contends that only Dr. Bell would have an incentive to archive this Twitter post on "archive.today." OCPP certainly did not. ECF 57-1 ¶6. Having disclaimed any knowledge of the website, Dr. Bell has no way of establishing that the archive.today website is anything but hearsay and, as such, it is not evidence. Moreover, as OCPP did not do any archiving, it is irrelevant to whether the limitations period has run.

[2] Plaintiff makes the preposterous assertion that OCPP infringed Plaintiff's copyright in the "WIN Passage" by removing the passage from Twitter after receiving Plaintiff's demand that it do so. Of course, Plaintiff sued OCPP for purportedly posting the "WIN Passage," not for removing it. The idea that such an argument could possibly have merit begs credulity and

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

Again, there is no evidence that OCPP reproduced, copied, displayed or otherwise used the allegedly infringing "WIN Passage" at any time within the three-year statute of limitations. Plaintiff's contention that OCPP "repeatedly displayed and utilized of Defendant's copyrighted work within three years of the case's filing" [sic] is simply false. *See* ECF 60 at 5:10–11.

Plaintiff alleges that OCPP infringed his copyright when it posted the "WIN Passage" in 2015. Plaintiff's claim accrued when he discovered the infringing post in January 2016. *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 671 (2014). He filed this lawsuit in March 2019—more than three years later. His claim is barred.

### III. OCPP IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S TRADEMARK CLAIM BECAUSE IT IS NOT SUPPORTED BY ANY EVIDENCE

OCPP is entitled to summary judgment that it did not infringe Plaintiff's "WINNING ISN'T NORMAL" trademark. As noted above, OCPP swim coach Rolandas Gimbutis found the allegedly infringing passage in 2015, posted it on Twitter and forgot about it. ECF 57-1 ¶¶5–6. Plaintiff presents no evidence that anyone ever even saw the post, let alone that anyone might have been confused about any connection with Plaintiff. In fact, "the post received no likes, no comments, and no re-tweets." *Id.* at ¶5.

In its XMSJ, OCPP pointed out that Plaintiff would be unable to point to any evidence of potential or actual confusion to support its claim of trademark infringement. In opposing summary judgment, Plaintiff fails as expected. Plaintiff recites the so-called *Sleekcraft* factors, but points to no evidence supporting any of them—other than the fact that the offending passage contained the phrase "Winning Isn't Normal," which also happens to be Plaintiff's trademark.

Plaintiff offers no evidence about:
- The strength of his trademark;
- The proximity of the goods or services;
- Evidence of actual confusion;
- Marketing channels used;
- Type of goods and the degree of care likely to be exercised by the purchaser;
- Defendants intent in selecting the mark; or
- The likelihood of expansion of the product lines.

---

highlights the weakness of Plaintiff's remaining arguments. This is Plaintiff's sole basis for distinguishing OCPP's case law. None of the case law OCPP cited is distinguishable.

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

1   Plaintiff argues that because the phrase "Winning Isn't Normal" was contained in the passage
2   OCPP posted on Twitter, no analysis of any other *Sleekcraft* factors is required since, apparently,
3   OCPP's Twitter feed was somehow rendered a "counterfeit" of Plaintiff's services. *See* ECF 60
4   at 6:15–19.

This argument challenges Plaintiff's credibility. Plaintiff points to no evidence that OCPP ever used the WINNING ISN'T NORMAL brand in connection with ***any*** goods or services. Accordingly, the idea that OCPP—a community pool—is so similar to Plaintiff's Texas-based consultancy that it can be treated as a counterfeit of Plaintiff simply because a swim coach thought it would be nice to put something inspirational up on Twitter is absurd.

And even if it were possible to draw some connection between "sales" of OCPP's community pool services and swim gear[3], it would be impossible to quote the so-called "WIN Passage" without using the phrase "Winning isn't normal"—since, of course, the phrase appears in the passage. As OCPP noted in its XMSJ, because it would be impossible to quote the "WIN Passage" without using that phrase, this would be a case of nominative fair use since the phrase refers to the passage. ECF 57 at 7.

In any event, because Plaintiff has failed to come forward with evidence supporting any likelihood of confusion between OCPP's community pool and Plaintiff's books or consultancy, OCPP is entitled to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (summary judgment should be granted where the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.").

## IV.  OBJECTIONS TO EVIDENCE

### A.  Objections to Declaration of Keith Bell

OCPP objects that, in Reply, Plaintiff seeks through the Declaration of Keith Bell to introduce evidence in support of his Motion for Summary Judgment that should have been presented in its original motion. It is inappropriate in Reply to submit evidence in support of a dispositive motion that could have been submitted earlier.

---

[3] A proposition for which there is no admissible evidence.

1  OCPP objects that Exhibits 1, 7, 9, 11, 14 and 20 are hearsay for which there is no
2  exception. For example, Bell testifies that Exhibit 1 constitutes "true and correct copies of
3  documentation produce in discovery concerning My background." [sic.]. ECF 61 at 2(a).
4  Exhibit 1 is Bell's résumé. Notably, Bell testifies only that it is a true copy of a document
5  produced in discovery, not that its contents are true. Accordingly, the Court cannot accept the
6  truth of any of the matters contained in it.

7  Likewise, for Exhibit 7, which purports to be a true and correct copy of "documentation
8  produced in discovery concerning screenshots of Defendant's website." *Id.* at 2(b). Bell does not
9  purport to actually authenticate the document, except to state that it was "produced in discovery."
10 Its actual provenance is unknown.

11 Exhibits 9 and 11 are Plaintiff's interrogatory responses and the transcript of his own
12 deposition. These are paradigmatic out-of-court statements offered for the truth of the matter
13 asserted. Because there is no exception to the hearsay rule, they cannot be considered.

14 Exhibit 14 purports to be a screen shot of a Google page showing results for "winning
15 isn't normal." *Id.* at 2(f). While the screen shot may be accurate, Plaintiff is asking the Court to
16 accept that the products shown on that page are actually for sale by Plaintiff in connection with
17 his business. Bell inexplicably offers no testimony to support that underlying fact, and
18 accordingly, it must be rejected.

19 As to Exhibit 20, Bell claims only that it was a document "produced in discovery
20 concerning license fees." *Id.* at 2(j). Again, inexplicably, Bell does not testify that any of the
21 rates or license fees set forth on that document are, in fact, accurate or reflect rates actually
22 obtained by him to license his copyrights.

23  **B.   Request for Judicial Notice**

24 OCPP objects that Exhibits 4, 6, 8, 10, 12, 15, 22, 24–38 are not appropriate for judicial
25 notice. Plaintiff recognizes that a fact is subject to judicial notice under Federal Rule of Evidence
26 201(b) in this context only where it is "not subject to reasonable dispute [and] . . . capable of
27 accurate and ready determination by resort to sources who accuracy cannot reasonably be
28

questions." ECF 62 at 6. Plaintiff nowhere explains how any of the facts shown in these exhibits meets these standards.

For example, Exhibit 4 purports to show "Dr. Bell's website offering certain goods for sale." *Id.* at 2. Obviously, whether this is a true representation of Bell's offerings could be subject to a reasonable dispute and is therefore not appropriate for judicial notice. If Bell is, in fact, offering these goods, why not so testify? Exhibit 22 is objectionable for the same reason.

Likewise, Plaintiff asks the Court to take judicial notice of purported facts in a Wikipedia entry in order to characterize OCPP employee Rolandas Gimbutis. Without commenting on the accuracy of the Wikipedia page, the accuracy of a publicly-edited Wikipedia page is certainly "subject to reasonable dispute" and is not "capable of accurate and ready determination." *See Badasa v. Mukasey*, 540 F.3d 909, 910 (8th Cir. 2008) (Wikipedia not always a reliable source).

Exhibits 6, 8 and 10 purport to be print outs of OCPP's Oakland Undercurrents team page, its webstore, and its Twitter feed respectively. Again, these party-related documents are improper for judicial notice and are not properly authenticated. Further, Exhibit 6 appears to be incomplete and Exhibit 8 is a compilation document offered without foundation for why the two documents should be taken together. *See* 1 Weinstein's Federal Evidence § 201.13 (2020) (courts should be hesitant to take judicial notice of the contents of private websites).

Exhibits 24 through 36 appear to be documents taken from the California Secretary of State website relating to OCPP's purported noncompliance with technical registration requirements. That these documents exist may be subject to judicial notice, but the underlying premise, i.e., that OCPP is somehow not what it purports to be, is not. These documents do not bear on OCPP's non-profit business model or its status. And, even more importantly, they are entirely irrelevant to the parties' cross-motions for summary judgment—at least Plaintiff nowhere explains why OCPP's registration status is relevant. And to the extent this is arguably relevant to OCPP's fair use defense, it is improper reply evidence that should be stricken.

Exhibits 15 and 37 are an article on copyright law and Twitter advice on deleting tweets respectively. Again, the contents of neither document is subject to judicial notice—and Plaintiff points to nothing in them that suggests they meet the criteria for judicial notice. If Plaintiff is

THE OAKLAND COMMUNITY POOLS PROJECT, INC.'S REPLY ISO CROSS-MOTION FOR SUMMARY JUDGMENT

simply asking the Court to notice that these documents exist, then they are completely irrelevant. Whether their contents are true is certainly not something that is "not subject to reasonable dispute [and] . . . capable of accurate and ready determination by resort to sources who accuracy cannot reasonably be questions."

Finally, while the Court can take judicial notice that Plaintiff filed a Complaint (Exhibit 21), the contents of the Complaint are obviously not subject to judicial notice to the extent they are disputed. *See* Exhibit 5 (OCPP's Answer).

## V. CONCLUSION

For the foregoing reasons, the Court should grant OCPP summary judgment on each of the claims asserted by Plaintiff.

Dated:  March 11, 2020                                     Squire Patton Boggs (US) LLP


By: */s/ Joseph A. Meckes*
   Joseph A. Meckes
   Rafael M. Langer-Osuna
   Melanie P. Cockrum
Attorneys for Defendant
THE OAKLAND COMMUNITY POOLS PROJECT, INC.

010-9012-2770/1/AMERICAS

7   Case No. 4:19-cv-01308-JST
THE OAKLAND COMMUNITY POOLS PROJECT, INC.'S REPLY ISO CROSS-MOTION FOR SUMMARY JUDGMENT