UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEITH F. BELL,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>THE OAKLAND COMMUNITY POOLS PROJECT, INC.,<br><br>　　　　Defendant. | Case No. 19-cv-01308-JST<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: ECF Nos. 45, 57 |

Before the Court are the parties' cross-motions for summary judgment. The Court will deny Plaintiff's motion and grant Defendant's motion.

**I.    BACKGROUND**

Plaintiff Dr. Keith Bell is a sports psychologist and performance consultant who published a book entitled *Winning Isn't Normal* in 1982. ECF No. 61-1 at 2, 5. Bell registered a copyright on the book in 1989 and trademarked the phrase "Winning Isn't Normal" ("the WIN Phrase") in 2014. ECF No. 62-1. The book contains a passage Bell refers to as the "WIN Passage."[1] ECF

---

[1] Bell obtained a separate copyright for the WIN Passage in November 2017, well after his discovery of the alleged infringement in this case. ECF No. 62-2. The WIN Passage reads in full:

> Winning isn't normal. That doesn't mean there's anything wrong with winning. It just isn't the norm. It's highly unusual.
>
> Every race only has one winner. No matter how many people are entered (not to mention all those w[h]o tried and failed to make cuts), only one person (or one relay) wins each event.
>
> Winning is unusual. As such, it requires unusual action.
>
> In order to win, you must do extraordinary things. You can't just be one of the crowd. The crowd doesn't win. You have to be willing to stand out and act differently.

1  No. 45 at 10.  Bell sells the *Winning Isn't Normal* book, as well as products bearing the WIN

2  Passage and Phrase.  ECF No. 57-4 at 7.

3        Defendant Oakland Community Pools Project ("OCPP") is a nonprofit organization that

4  encourages swimming participation for local youth who would not otherwise be able to afford to

5  learn how to swim.  ECF No. 57-1 ¶ 2.  It operates the Oakland Undercurrent youth swim team,

6  providing its members opportunities to participate in swim events, swim lessons, and other swim-

7  related services at its Oakland location.  *Id.* ¶¶ 3-4.  OCPP maintains a team Twitter account "to

8  keep swim team members and their families informed about various events."  *Id.* ¶ 4.  OCPP also

9  maintains a website that links to goods sold by third parties.  *Id.* ¶ 7.  On or about December 23,

10  2015, OCPP's head coach, Rolandas Gimbutis, posted an image of the WIN Passage and Phrase

11  on OCPP's Twitter feed.  *Id.* ¶ 5; ECF No. 61-3 at 7.  Gimbutis found the image, which did not

12  contain Bell's name or any identifying mark, posted "in a public place."  ECF No. 57-1 ¶ 5; ECF

13  No. 61-3 at 7; ECF No. 61-9 at 2.  He "found the words in the image inspiring" and states that his

14  intention was "to educate and motivate members of the Oakland Undercurrent swim team."  ECF

15  No. 57-1 ¶ 5; ECF No. 61-3 at 7; ECF No. 61-9 at 2.  Gimbutis was not aware of the author or

16  origin of the WIN Passage or Phrase when he posted it.  ECF No. 57-1 ¶¶ 5-6; ECF No. 61-9 at 2.

17  At the time of the post, which received no likes, shares, or comments, OCPP's Twitter account

18  had 44 followers.  ECF No. 57-1 ¶ 5; ECF No. 61-3 at 5.

---

> Your actions need to reflect unusual values and priorities.  You have to value success more than others do.  You have to want it more.  (Now, take note!  Wanting it more is a decision you make and act upon – not some inherent quality or burning inner drive or inspiration!)  And you have to make that value a priority.
>
> You can't train like everyone else.  You have to train more and train better.
>
> You can't talk like everyone else.  You can't think like everyone else.  You can't be too willing to join the crowd, to do what is expected, to act in a socially accepted manner, to do what's "in."  You need to be willing to stand out in the crowd and consistently take exceptional action.  If you want to win, you need to accept the risks and perhaps the loneliness … because *winning isn't normal!!*

ECF No. 62-2 at 4.

Bell discovered OCPP's post in January 2016. ECF No. 57-3 at 4-5; ECF No. 57-4 at 5. The parties contest the date Bell informed OCPP of the alleged infringement: Bell claims OCPP received actual notice sometime in April 2017; OCPP says it was the following month. *See* ECF No. 45 at 16; ECF No. 57 at 16, ECF No. 57-1 ¶ 6; ECF Nos. 61-7, 61-9. In any event, Gimbutis received a cease-and-desist letter on May 3, 2017, and removed the post the next day. ECF No. 57-1 ¶ 6; ECF No. 61-9 at 2.

On March 11, 2019, Bell filed a complaint against OCPP for copyright and trademark infringement. ECF No. 1 ("Compl."). On April 11, 2019, OCPP filed its answer. ECF No. 15. On January 10, 2020, Bell filed a motion for summary judgment. ECF No. 45. On February 19, 2020, OCPP filed its opposition and a cross motion for summary judgment. ECF No. 57. On March 4, 2020, Bell filed his opposition and reply. ECF No. 60. On March 11, 2020, OCPP filed its reply. ECF No. 63. The Court took the matter under submission without a hearing. ECF No. 64.

## II.    JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## III.   JUDICIAL NOTICE AND EVIDENTIARY OBJECTIONS

In support of his motion for summary judgment, Bell submits a declaration by his attorney, Adam E. Urbanczyk, with 23 documents attached. ECF No. 45-1. In this declaration, Urbanczyk states that he has "personal knowledge of the following facts and, if called as a witness, [he] could and would competently testify" to them. *Id.* at 1. Urbanczyk also declares that "[t]he documents at issue here meet the Rule 201 standard" for judicial notice. *Id.* at 4. OCPP objects to all of Bell's evidence on the grounds that Urbanczyk has not established personal knowledge, and to particular documents as unauthenticated, inadmissible hearsay, and/or mischaracterized by the declaration. ECF No. 57 at 23-4.

In response, Bell attached a declaration of his own to his opposition/reply and filed a request for judicial notice. ECF No. 60 at 22; ECF Nos. 61, 62. These filings seek to admit the same documents originally attached to Urbanczyk's declaration, as well as 15 new documents. In its reply, OCPP objects that the evidence should have been presented in support of Bell's original

1  motion. ECF No. 63 at 5. The Court sustains this objection as to Exhibits 24-38 and has
2  considered those exhibits only in opposition to OCPP's motion for summary judgment.

### A. Judicial Notice

Federal Rule of Evidence 201(b) authorizes courts to take judicial notice of facts that are "not subject to reasonable dispute" and that are "capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned." Fed. R. Evid. 201(b); *United States v. Ritchie*, 342 F.3d 903, 907-09 (9th Cir. 2003). Matters of public record are properly subject to judicial notice, including "documents of the Patent and Trademark Office." *Gorski v. The Gymboree Corp.*, No. 14-cv-01314-LHK, 2014 WL 3533324, at *3 n.1 (N.D. Cal. 2014). The Court therefore grants judicial notice of Bell's copyright and trademark registration certificates. *See* ECF Nos. 62-1, 62-2.[2]

While Bell cites district courts who have taken judicial notice of the contents of websites, ECF No. 62 at 6-7, this Court has held that a document is not "judicially noticeable simply because it appears on a publicly available website, regardless of who maintains the website or the purpose of the document." *Rollins v. Dignity Health*, 338 F. Supp. 3d 1025, 1032-33 (N.D. Cal. 2018). The Court takes judicial notice even more cautiously "when a party seeks to introduce documents it created and posted on its own website." *Id.* It therefore rejects Bell's request to judicially notice screenshots of his own website (Ex. 4), OCPP's website (Exs. 8, 10, 23), and OCPP's Twitter page (Ex. 6); a Wikipedia entry for Gimbutis (Ex. 12); an online article (Ex. 15); and the Amazon listing for Bell's book (Ex. 22).

### B. Evidentiary Objections

Rule 56(c)(4) provides: "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and

---

[2] Bell also seeks judicial notice of an Exhibit 16, which he describes as "A true and correct copy of the United States Patent and Trademark Office registration certificate for the trademark and WINNING ISN'T NORMAL®." ECF No. 62 at 3. Because no Exhibit 16 is attached to the request for judicial notice, the Court cannot grant this request. The Court also disregards Bell's request for judicial notice of the complaint and answer in this case, as the Court need not take judicial notice of these documents to consider the fact that they exist (if not the truth of the matters asserted therein).

4

show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). An affidavit's failure to be set forth on personal knowledge renders the facts within the declaration inadmissible. *Block v. City of Los Angeles*, 253 F.3d 410, 419 (9th Cir. 2001) (abuse of discretion to consider fact set forth in affidavit not made on personal knowledge at summary judgment).

However, "[t]o survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rules of Civil Procedure 56." *Block*, 253 F.3d at 418-19 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). The Court's focus at summary judgment is not on the form of the evidence submitted but on whether its content would be admissible. For example, hearsay evidence attached to an affidavit may be considered at summary judgment if the out-of-court declarant could present the evidence through direct, admissible testimony at trial. *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003) (because contents of diary were recitations of events within declarant's personal knowledge, reliance on diary at summary judgment was permissible even if diary itself was inadmissible at trial).

OCPP objects to Exhibit 1, which Bell describes as "true and correct copies of documentation produce in discovery concerning My background" (sic), and which appears to include Bell's resume, a list of publications, articles about Bell, and other related materials. *See* ECF No. 63 at 6; ECF No. 61-1. Bell's declaration states only that he has "personal knowledge of the following facts and, if called as a witness, [he] could and would competently testify to" the attached facts. ECF No. 61 at 1. OCPP objects to the entire exhibit as inadmissible hearsay. ECF No. 63 at 6. Because Bell has personal knowledge of his background and could testify as to the contents of this exhibit at trial, the Court overrules this objection. *See Fraser*, 342 F.3d at 1036.

OCPP also objects to Exhibit 7, which Bell describes as "true and correct copies of documentation produced in discovery concerning screenshots of Defendant's website as it was archived on March 28, 2016." *See* ECF No. 61 at 2. OCPP argues that this exhibit is unauthenticated hearsay. ECF No. 63 at 6. "[U]nauthenticated documents cannot be considered in a motion for summary judgment" because "authentication is a 'condition precedent to

5

admissibility.'" *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) (quoting Fed. R. Evid. 901(a)). Because Bell's conclusory assertion of personal knowledge is not "sufficient to support a finding that the item is what the proponent claims it is," Fed. R. Evid. 901(a), the Court sustains the objection. For the same reasons, the Court sustains OCPP's objections to Exhibit 14 ("A true and correct copy a screenshot of Google search results for 'winning isn't normal,' conducted on March 4, 2020." (sic), ECF No. 61 at 2) and Exhibit 20 ("true and correct copies of documentation produced in discovery concerning license fees," *id.*).

OCPP also objects to Exhibit 9 (OCPP's responses to Bell's first set of interrogatories) and 11 (an excerpt of Bell's deposition transcript). *See* ECF No. 61 at 2. OCPP objects to the documents wholesale as "paradigmatic out-of-court statements offered for the truth of the matter asserted." ECF No. 63 at 6. These objections are overruled. OCPP's interrogatory responses are the statement of a party opponent. *See* Fed. R. Evid. 801(d)(2). Although Bell's deposition constitutes an out-of-court statement, the court treats it as a declaration of the kind typically submitted in connection with a summary judgment motion. *See S.E.C. v. Phan*, 500 F.3d 895, 913 (9th Cir. 2007) ("An interview given under penalty of perjury may . . . be treated as a declaration – and therefore may be considered in ruling on a summary judgment motion."); *Westerlund Log Handlers, LLC v. Esler*, No. 3:16-CV-922-SI, 2018 WL 614706, at *8 (D. Or. Jan. 29, 2018) ("Because the objected-to depositions were taken under oath, the Court considers them for purposes of the pending summary judgment motion to the same extent that the Court would consider affidavits or declarations[.]").

**IV.    LEGAL STANDARD**

Summary judgment is proper where the pleadings, discovery, and affidavits show there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See id*.

Where the party moving for summary judgment would bear the burden of proof at trial,

1    that party bears the initial burden of producing evidence that would entitle it to a directed verdict if
2    uncontroverted at trial.  *See C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474,
3    480 (9th Cir. 2000).  Where the party moving for summary judgment would not bear the burden of
4    proof at trial, that party bears the initial burden of either producing evidence that negates an
5    essential element of the non-moving party's claim, or showing that the non-moving party does not
6    have enough evidence of an essential element to carry its ultimate burden of persuasion at trial.
7    *See Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000).  If the
8    moving party satisfies its initial burden of production, then the non-moving party must produce
9    admissible evidence to show that a genuine issue of material fact exists.  *See id*.  If the non-
10   moving party fails to make this showing, the moving party is entitled to summary
11   judgment.  *Celotex*, 477 U.S. at 323.

12   On a summary judgment motion, the Court does not make credibility determinations or
13   weigh conflicting evidence with respect to disputed material facts.  *See T.W. Elec. Serv., Inc., v.*
14   *Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).  Also, the Court must view the
15   evidence in the light most favorable to the nonmoving party; if the evidence produced by the
16   moving party conflicts with evidence produced by the nonmoving party, the Court must assume
17   the truth of the evidence submitted by the nonmoving party.  *See Leslie v. Grupo ICA*, 198 F.3d
18   1152, 1158 (9th Cir. 1999).

19   **V.    DISCUSSION**

20   Bell argues that he is entitled to summary judgment for OCPP's infringement of his
21   copyright to *Winning Isn't Normal* and his trademark of the WIN Phrase.  ECF No. 45 at 12-18.
22   OCPP argues that it is entitled to summary judgment on Bell's copyright claim based on the
23   statute of limitations, ECF No. 57 at 9, and on Bell's trademark claim because Bell has not met his
24   burden to show a likelihood of confusion, *id.* at 11.

25       **A.    Copyright Claim**

26   Bell asserts that OCPP directly infringed on his Copyright Act rights of display and
27   distribution by uploading and posting the WIN Passage and Phrase.  ECF No. 45 at 12.  To prevail
28   on a claim of copyright infringement, a plaintiff must show (1) "ownership of the allegedly

infringed material" and (2) that the defendant "violate[d] at least one exclusive right granted to [the copyright holder] under 17 U.S.C. § 106." *VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 731 (9th Cir. 2019) (quoting *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001)). Display and distribution are two exclusive rights protected by Section 106. *See* 17 U.S.C. § 106(3), (5). Because Bell's complaint alleges only that OCPP infringed on his right of display, however, *see* Compl. ¶¶ 31-38, he may not raise a distribution argument in his motion for summary judgment. *See, e.g.*, *Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1079 (9th Cir. 2008) ("[W]here, as here, the complaint does not include the necessary factual allegations to state a claim, raising such claim in a summary judgment motion is insufficient to present the claim to the district court.").

Copyright infringement claims must be "commenced within three years after the claim accrued." 17 U.S.C. § 507(b). A copyright claim accrues and the statute of limitations begins to run "when a party discovers, or reasonably should have discovered, the alleged infringement." *Media Rights Tech., Inc. v. Microsoft Corp.*, 922 F.3d 1014, 1022 (9th Cir. 2019) (quoting *Polar Bear Prods. Inc. v. Timex Corp.*, 384 F.3d 700, 706 (9th Cir. 2004)). Under the "separate-accrual rule," however, "when a defendant commits successive violations [of the Copyright Act], the statute of limitations runs separately from each violation." *Id.* at 1023 (quoting *Petrella v. Metro-Goldwyn-Mayer, Inc.* 572 U.S. 663, 671 (2014)). In other words, each new wrong "gives rise to a discrete 'claim' that 'accrue[s]' at the time the wrong occurs." *Id.* (citation omitted).

OCPP argues that Bell's copyright infringement claim is barred by the statute of limitations because Bell did not file this action within three years of discovering the alleged violation. ECF No. 57 at 9. OCCP has presented evidence that Bell first discovered OCPP's Twitter post in January 2016, which Bell does not dispute. ECF No. 57-3 at 4-5 (Bell depo.); ECF No. 57-4 at 5 (Bell's supplemental responses to OCPP's first interrogatories). This discovery occurred more than three years before Bell filed this action in March 2019. *See* Compl. Bell asserts, however, that his claim is saved by the separate-accrual rule. ECF No. 60 at 8. Bell argues that since OCPP's Twitter post remained online until at least May 3, 2017 – the day before the parties agree Gimbutis removed the post – "each time the post was published and displayed to

8

1   a viewer . . . a separate act of infringement occurred." *Id.*; ECF No. 45 at 25.

2   The Supreme Court has cautioned that "separately accruing harm should not be confused
3   with harm from past violations that are continuing." *Petrella*, 572 U.S. at 671 n.6. Courts
4   following this guidance have concluded that the mere fact that a document remained online does
5   not trigger the separate-accrual rule. *See, e.g.*, *Wolf v. Travolta*, 167 F. Supp. 3d 1077, 1099 n.13
6   (C.D. Cal. 2016) ("The fact that the allegedly infringing document – published in 2010, outside
7   the relevant three-year window – *remained* on defendant's website through 2014 does not give rise
8   to a discrete claim accruing within the three-year window." (emphasis in original)); *Nakada +*
9   *Associates, Inc. v. City of El Monte*, EDCV 16-1467-GW (SPx), 2017 WL 246997, at *3 (C.D.
10  Cal. June 2, 2017) (finding copyright claim barred where defendants posted a Youtube video
11  outside the statute of limitations and did not "post or utilize" plaintiff's materials within the three-
12  year window); *Alfa Laval v. Flowtrend*, No. H-4-2597, 2016 WL 2625068, at *5, *6 (S.D. Tex.,
13  May 9, 2016) (finding copyright claim barred where "there is no evidence that Defendants
14  engaged in new acts of copyright infringement after [they] originally posted the Copyrighted
15  Materials on [their] website" outside the statute of limitations); *cf. Michael Grecco Prods. Inc. v.*
16  *Valuewalk, LLC*, 345 F. Supp. 3d 482, 512 (S.D.N.Y. 2018) (suggesting plaintiff's copyright
17  claim would be within the statute of limitations if defendants had "republish[ed]" a copyrighted
18  image online, but not if it were just "continuously available for public viewing"). [3]

19  Bell attempts to distinguish his case by characterizing OCPP's post as "a reiterating
20  display and publication of Plaintiff's copyright-protected work, on the Twitter platform and
21  surrounded by dynamic content." ECF No. 60 at 9. Courts evaluating the separate-accrual rule
22  for online content, however, have focused on whether the defendant "engaged in new acts" of

---

[3] The Court is aware of one Federal Claims Court case that reaches the opposite conclusion. *See APL Microscopic v. United States*, 144 Fed Cl. 489, 498-99 (2019) (finding that each time a user viewed allegedly infringing photographs on NASA's webpage constituted a separate display violation). The *APL Microscopic* court relied in part on *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146 (9th Cir. 2007), which established that transmitting copyrighted works over the Internet to a user's browser constitutes a violation of a "display right." *Perfect 10* does not mention the statute of limitations, however, or address whether a new claim accrues for each transmission. *See Chelko v. Does*, No. 3:18-CV000536-GCM, 2019 WL 3294201, at *5 (W.D.N.C. July 22, 2019) (noting as much). The Court therefore finds the reasoning in *Wolf*, *Nakada*, and *Alfa Laval* more persuasive.

copyright infringement, not the nature of the digital platform. In *Chelko*, 2019 WL 3294201, at *1, for example, the defendant uploaded photographs to its website in violation of a license agreement. The court rejected the plaintiff's argument that each "transmission over the internet" – i.e., each time a user accessed the photographs – was a separate copyright violation. *Id.* at *4-5. Because the plaintiff did "not allege any new act Defendant took to otherwise infringe his copyright within the limitation period," the court found plaintiff's claim time-barred. *Id.*; *see also Alfa Laval*, 2016 WL 2625068, at *6 (finding claim time-barred where plaintiff presented "no evidence that [defendant] engaged in new acts of copyright infringement after it originally posted the Copyrighted Materials on its website"). Bell does not explain how the "reiterating" or "dynamic" nature of a Twitter post would support a finding of additional infringing acts, nor does he cite any authority for this proposition.

Bell argues that a third party's 2016 archiving of OCPP's website and Gimbutis's deletion of the post in 2017 constituted additional infringing acts. *See* ECF No. 60 at 9-10. These arguments are insupportable. Bell has presented no evidence that *OCPP* archived the website, and even if he had, it is not clear how such an action would constitute "display" of the material under Section 106(5). *See Alfa Laval*, 2016 WL 2625068, at *6 ("Although others may have downloaded the Copyrighted Material after [the statute of limitations ran], Defendants are 'only liable for [their own] acts of infringement.'" (citation omitted)). And it should be self-evident that *removing* a copyrighted work from a website cannot constitute public display of that work under Section 106(5). "If every access of a copyrighted work on a website establishes a new claim for infringement, as Plaintiff contends, the statute of limitations becomes obsolete for the internet." *Chelko*, 2019 WL 3294201, at *5. The purpose of the statute of limitations is to "render uniform and certain time within which copyright claims could be pursued." *Id.* For Bell, that time came to a close in January 2019.

As Bell has presented no evidence that OCPP engaged in any acts of copyright infringement after its December 2015 Twitter post, he has not shown a genuine dispute of material fact as to OCPP's statute of limitations defense. The Court therefore grants OCPP summary judgement on this claim.

**B. Trademark Claim**

Bell asserts that OCPP infringed on his "Winning Isn't Normal" trademark by posting the WIN Passage, which includes the trademarked phrase, to Twitter, and by adding the phrase to the body of the post. Compl. ¶¶ 39-47; ECF No. 45 at 18. Though Bell does not specify under which subsection of the Lanham Act he brings his trademark claim, only Section 1114(1)(a) is implicated here. *See* 15 U.S.C. § 1114(1); Compl. ¶¶ 39-47. Section 1114(1)(a) imposes liability on:

> (1)[a]ny person who shall, without the consent of the registrant – (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive.

15 U.S.C. § 1114(1)(a).

The parties devote the bulk of their trademark arguments to whether OCPP's Twitter post posed a likelihood of confusion. *See, e.g.*, ECF No. 45 at 17-18; ECF No. 57 at 12-13. The Court need not reach that question, however, because there is no evidence of commercial use. "The Supreme Court has made it clear that trademark infringement law prevents only unauthorized uses of a trademark in connection with a commercial transaction in which the trademark is being used to confuse potential consumers." *Bosley Med. Inst. v. Kremer*, 403 F.3d 672, 676 (9th Cir. 2005) (citing *Prestonettes, Inc. v. Coty*, 264 U.S. 359, 368 (1924)). Because the purpose of the Lanham Act is "to protect the ability of consumers to distinguish among competing producers," *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 774 (1992) (quoting *Park 'N Fly*, 469 U.S. 189, 198 (1985)), the statute does not prohibit use of a mark that "simply cannot mislead consumers into buying a competing product," *Bosley*, 403 F.3d at 679-80.

Use is commercial if it is "in connection with a sale of goods or services." *Id.* at 677; *see also Wash. State Republican Party v. Wash. State Grange*, 676 F.3d 784, 795 (9th Cir. 2012). While the commercial use requirement "does not require the actual *sale* of goods and services," a plaintiff in a trademark claim must establish that the defendant "offers *competing* [goods or] services to the public." *Bosley*, 403 F.3d at 679 (emphasis in original); *Wash. State Republican Party*, 676 F.3d at 795 ("At minimum . . . the plaintiff must show that the defendant offers

*competing* services to the public." (emphasis in original)). In the nonprofit context, courts have found competition where organizations provide similar services or run similar campaigns. In *Iglesia Ni Cristo v. Cayabyab*, No. 18-cv-00561-BLF, 2019 WL 3997474, at *9 (N.D. Cal. Aug. 23, 2019), for example, a plaintiff church alleged that another church had used its flag and seal to increase attendance at worship services. The court found that those allegations "show[ed] Defendants' use of [plaintiff's] marks to offer competing services" and were "sufficient to meet the commercial transaction requirement even absent allegations that either [plaintiff] or Defendants charge for worship services." *Id.*

Bell has presented no evidence that OCCP offers *any* competing product or service, much less one that poses a likelihood of confusion with Bell's own goods or services. OCPP is a nonprofit that provides swimming opportunities for local youth; Bell is a sports psychologist, author, and performance consultant. In his opposition to OCPP's cross-motion for summary judgment, Bell argues that OCPP used his trademark "in promoting its business that involved organized swimming instruction and event organizations of the type offered by Plaintiff through his website." ECF No. 60 at 12. There is no evidence for this assertion, however, because the Court has denied judicial notice of the single screenshot from his website that Bell cites in support. ECF No. 62-3 at 2; *supra* III.A. And even if the Court had admitted this evidence, it does not show that Bell and OCPP compete in the same market. In the screenshot, Bell offers "telephone, in-office, and on-site consultations to meet your specific needs." ECF No. 62-3 at 4. These "on-site consultations" include "accompanying: business leaders to meetings; professionals to speaking engagements/conferences; [and] individuals or teams to competitions." *Id.* The first two of these categories are irrelevant to these proceedings, and whatever "accompanying . . . individuals or teams to competitions" means, it does not encompass OCPP's business – OCPP doesn't "accompany the team to competitions"; it *is* the team. The screenshot does contain a reference, on the side of the screen, to "W.I.N. Swim Events," but neither the screenshot nor any of the evidence submitted to the Court explain what those are, and so it is impossible to conclude that they compete with any event sponsored or organized by OCPP. Finally, there is no evidence regarding when the material depicted in the screenshot was posted online, if it ever was; it may

12

have postdated the alleged infringement.[4]  For all these reasons, no reasonable jury could conclude that Bell and OCPP offer competing services.

Nor has Bell presented evidence that OCPP offers goods of any kind, let alone goods using his trademark.  Bell argues that OCPP's website "solicit[s]" visitors "to purchase some of the same categories of products (e.g., apparel) that [Bell] sells under his WINNING ISN'T NORMAL registered trademark."  ECF No. 45 at 18.  The Court has denied judicial notice of the only evidence Bell cites for the proposition that he sells apparel with the trademark.  *See* ECF No. 62-3; *supra* III.A.  While OCPP has submitted evidence that supports this fact, *see* ECF No. 57-4, Bell has not submitted any admissible evidence that OCPP sells "the same categories of products," *see supra* III.A. (denying judicial notice of Exhibit 8); III.B (sustaining objection to Exhibit 7).

Without any evidence that OCPP used Bell's trademark in association with competing goods or services, Bell has not met his burden of production as to his trademark claim.  *See Utah Lighthouse Ministry v. Found. for Apologetic Info. and Research*, 527 F.3d 1045, 1054 (10th Cir. 2008) ("Unless there is a competing good or service labeled or associated with the plaintiff's trademark, the concerns of the Lanham Act are not invoked.").  Because OCPP has shown that Bell does not have enough evidence of commercial use to carry his burden of persuasion on trademark infringement, *see Nissan Fire*, 210 F.3d at 1102-03, the Court grants OCPP summary judgment on Bell's trademark claim.

## CONCLUSION

For the reasons stated above, the Court DENIES Bell's summary judgment motion and GRANTS summary judgment to OCPP on Bell's copyright and trademark claims.  The clerk is directed to enter judgment and close the case.

**IT IS SO ORDERED.**

Dated:  May 4, 2020

JON S. TIGAR
United States District Judge

---

[4] The copyright date on the screenshot is 2017.