1

2
Squire Patton Boggs (US) LLP
Joseph A. Meckes (State Bar # 190279)

3
joseph.meckes@squirepb.com
Rafael M. Langer-Osuna (State Bar # 300948)

4
rafael.langerosuna@squirepb.com
275 Battery Street, Suite 2600

5
San Francisco, California  94111
Telephone:     +1 415 954 0200

6
Facsimile:     +1 415 393 9887

7
Attorneys for Defendant
THE OAKLAND COMMUNITY POOLS

8
PROJECT, INC.

9
UNITED STATES DISTRICT COURT

10
NORTHERN DISTRICT OF CALIFORNIA

11

12
KEITH F. BELL, PH.D.,

| | |
|---|---|
| Case No. 4:19-cv-01308-JST | |

13
                    Plaintiff,

**DEFENDANT THE OAKLAND
COMMUNITY POOLS PROJECT,**

14
          v.

**INC.'S MOTION FOR ATTORNEYS'
FEES**

15
THE OAKLAND COMMUNITY POOLS
PROJECT, INC.; and Does 1 to 20,

Judge:  Hon. Jon S. Tigar

16
                    Defendants.

17
Date:        June 24, 2020
Time:        2:00 p.m.

18
Room:        6

19

20

21

22

23

24

25

26

27

28

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

**TO PLAINTIFF AND HIS ATTORNEYS OF RECORD:**

NOTICE IS HEREBY GIVEN that on June 24, 2020 at 2:00 p.m., or as soon thereafter as counsel may be heard, before the Honorable John S. Tigar in Courtroom 6 of the above-entitled Court, located at 1301 Clay Street, Oakland, California, or by videoconference, Defendant The Oakland Community Pools Project, Inc. ("OCPP") will and hereby does move this Court pursuant to Rule 54(d) of the Federal Rules of Civil Procedure, Northern District Local Rules, Rule 54-6, 17 U.S.C. § 505, and 15 U.S.C. § 1117(a), for an order awarding OCPP its reasonable attorneys' fees and costs for having successfully defended against Plaintiff's claims for copyright and trademark infringement.

This Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the Declarations of Rafael M. Langer-Osuna, Joseph Meckes and Melanie Cockrum, any reply documents to be submitted in support of this Motion, the pleadings on file herein, and upon such other and further oral and/or documentary evidence as may be presented at the time of the hearing on this Motion.

Dated:  May 18, 2020                              Squire Patton Boggs (US) LLP


By: /s/ Rafael M. Langer-Osuna
_____
           Rafael M. Langer-Osuna
Attorneys for Defendant
THE OAKLAND COMMUNITY POOLS
PROJECT, INC.

OCPP's MOTION FOR ATTORNEYS' FEES
4:19-cv-01308-JST

1
2

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

ARGUMENT ......................................................................................................................... 6

    I.      AN AWARD OF ATTORNEYS' FEES IS APPROPRIATE UNDER THE COPYRIGHT ACT. .......................................................................................... 6

          A.    OCPP Prevailed on Summary Judgment on Each Cause of Action. ........... 6

          B.    Awarding Fees For Plaintiff's Unreasonable Litigation Positions Would Further The Purposes Of The Copyright Act. ................................ 7

          C.    Money, Not Protecting His Rights, Motivates Plaintiff Here. ................... 8

          D.    An Award Of Attorneys' Fees Is Necessary To Deter Future Shakedowns. ........................................................................................... 10

    II.     OCPP IS ENTITLED TO ATTORNEYS' FEES UNDER THE LANHAM ACT. ................................................................................................................ 12

    III.    OCPP IS ENTITLED TO THE FULL AMOUNT OF FEES SOUGHT ............. 12

          A.    The Time Spent By OCPP's Counsel Is Reasonable. .............................. 13

          B.    OCPP's Counsel's Billing Rates Are Reasonable. ................................. 15

          C.    Courts Have Awarded Comparable Fees In Comparable Cases. ............. 15

          D.    OCPP Has Satisfied Its Meet And Confer Requirement. ......................... 16

CONCLUSION .................................................................................................................... 16

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

- ii -

1

2

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

3

**Federal Cases**

4

5

*Bell v. Caught My Eye Photography, et al.*,
   2:18-cv-00961 (S.D. Ohio) ............................................................................. 5, 11

6

7

*Bell v. Granite School District*,
   2:19-cv-00209 (D. Utah) ................................................................................. 5, 11

8

*Bell v. Magna Times, LLC*,
   2019 WL 1896579 (D. Utah April 29, 2019) ........................................................ 7

9

10

*Bell v. Moawad Group, LLC*,
   326 F.Supp.3d 918 (D. Ariz. 2018)................................................................. 7, 11

11

12

*Blanchard v. Bergeron*,
   489 U.S. 87 (1989) ............................................................................................. 13

13

14

*Blum v. Stenson*,
   465 U.S. 886 (1984) ........................................................................................... 15

15

*Bosley Med. Inst. v. Kremer*,
   403 F.3d 672 (9th Cir. 2005) ............................................................................. 12

16

17

*Camacho v. Bridgeport Fin., Inc.*
   523 F.3d 973 (9th Cir. 2008) ............................................................................. 15

18

*Chalmers v. City of Los Angeles*,
   796 F.2d 1205 (9th Cir. 1986) ........................................................................... 15

19

20

*Choyce v. SF Bay Area Indep. Media Ctr.*,
   2014 WL 5597274 (N.D. Cal. Nov. 3, 2014)................................................. 6, 15

21

22

*Coles v. Wonder*,
   283 F.3d 798 (6th Cir. 2002) ............................................................................... 8

23

*Discovery Commn'cs v. Animal Planet, Inc.*,
   172 F.Supp.2d 1282 (C.D. Cal. 2001)................................................................ 13

24

25

*DuckHole Inc. v. NBCUniversal Media LLC*,
   2013 WL 5795204 (C.D.Cal. Oct. 25, 2013) ...................................................... 6

26

*Epikhin v. Game Insight N. Am.*,
   2016 WL 1258690 (N.D.Cal. Mar 31, 2016) ...................................................... 6

27

28

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

- iii -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

*Fantasy v. Fogerty*,
    94 F.3d 553 (9th Cir. 1996)...................................................................... 6

*Fogerty v. Fantasy, Inc.*,
    510 U.S. 517 (1994)........................................................................... 6, 7

*Gen. Universal Sys. v. Lee*,
    379 F.3d 131 (5th Cir. 2004)................................................................ 6

*Gonzalez v. City of Maywood*,
    729 F.3d 1196 (9th Cir. 2013)............................................................ 13

*Halicki Films, LLC v. Sanderson Sales & Mktg.*,
    547 F.3d 1213 (9th Cir. 2008).......................................................... 6, 12

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983)........................................................................... 14

*Karam v. City of Burbank*,
    352 F.3d 1188 (9th Cir. 2003)............................................................. 7

*Kerr v. Screen Extras Guild, Inc.*,
    526 F.2d 67 (9th Cir. 1975).............................................................. 13

*Kirtsaeng v. John Wiley & Sons, Inc.*
    136 S.Ct. 1979 (2016)................................................................. 1, 6, 7

*Legal Voice v. Stormans, Inc.*,
    757 F.3d 1015 (9th Cir. 2014)........................................................... 13

*Lewis v. Activision Blizzard, Inc.*,
    2014 WL 4953770 (N.D.Cal. Sept. 25, 2014), *aff'd Lewis v. Activision
    Blizzard, Inc.*, 634 Fed.Appx. 182 (9th Cir. 2015)................................... 8

*Maljack Products, Inc. v. GoodTimes Home Video Corp.*,
    81 F.3d 881 (9th Cir. 1996)............................................................... 15

*Media Rights Tech., Inc. v. Microsoft Corp.*,
    922 F.3d 1014 (9th Cir. 2019)............................................................. 8

*Micromesh Tech. Corp. v. American Recreation Prods., Inc.*,
    2007 WL 2501783 (N.D. Cal. Aug. 30, 2007)...................................... 14

*Moreno v. City of Sacramento*,
    534 F.3d 1106 (9th Cir. 2008)....................................................... 13, 14

*In re Nucorp Energy*,
    764 F.2d 655 (9th Cir. 1985)............................................................. 13

OCPP's MOTION FOR ATTORNEYS' FEES
4:19-cv-01308-JST

*Perfect 10, Inc. v. CCBill LLC*,
    488 F.3d 1102 (9th Cir. 2007) ........................................................................ 7, 15

*Perfect 10, Inc. v. Giganews, Inc.*,
    No. CV 11-07098-AB, 2015 U.S. Dist. LEXIS 54063 (C.D. Cal. Mar. 24,
    2015) .............................................................................................. 9, 10, 15

*SellPoolSuppliesOnline.com LLC v. Ugly Pools Ariz., Inc.*,
    2019 WL 1118206 (D. Ariz. Mar. 11, 2019) .................................................... 10

*Stephen W. Boney, Inc. v. Boney Servs., Inc.*
    127 F.3d 821 (9th Cir. 1997) .......................................................................... 12

*Superior Consulting Servs., Inc. v. Steeves-Kiss*,
    2018 WL 2183295 (N.D.Cal. May 11, 2018) .................................................. 15

**Federal Statutes**

15 U.S.C. § 1117(a) ................................................................................................ 1, 12

17 U.S.C. § 505 ........................................................................................................ 1, 6

17 U.S.C. § 507(b) ......................................................................................................... 8

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(6) ....................................................................... 2

Northern District Local Rules, Rule 54-5 ...................................................................... 16

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

OCPP's MOTION FOR ATTORNEYS' FEES
4:19-cv-01308-JST

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**INTRODUCTION**

Plaintiff Keith F. Bell, Ph.D. ("Plaintiff") sued OCPP on a stale copyright claim and for trademark infringement even though OCPP offers no competing product or service, all because of a single Twitter post of the so-called "WIN Passage." *See* Compl. (ECF 1); ECF 65.

Over the course of this litigation, Plaintiff has:

- Asserted a claim that discovery revealed to be plainly barred by the limitations period;
- Included a false statement in his Complaint, which he neither investigated nor withdrew;
- Had to be compelled to sit for deposition in the forum he chose for his suit; and
- Wasted the time of all involved, including the Court, by failing to follow the local rules.

Accordingly, this Court should grant OCPP's motion for attorneys' fees.  OCPP was completely successful in disposing of both of Plaintiff's meritless claims and in dealing with his unreasonable litigation positions.  Awarding fees here furthers the purposes of the Copyright Act. *See Kirtsaeng v. John Wiley & Sons, Inc.* 136 S.Ct. 1979, 1987 (2016).  This is especially true where these unreasonable litigation positions reflect a pattern repeated across the country and where Plaintiff's practice demonstrates an improper motive: to shake down defendants for quick settlements, regardless of the merits of his claims.  Thus, an award of attorneys' fees is also necessary to deter Plaintiff from future reckless and improperly motivated litigation conduct.

As demonstrated below, the Court should award OCPP the entire (heavily pre-discounted) sum of $120,000.00 pursuant to 17 U.S.C. § 505 and 15 U.S.C. § 1117(a).

**BACKGROUND**

OCPP, a nonprofit organization, operates the Oakland Undercurrent youth swim team and maintains a Twitter account communicating with the team.  ECF 57-1 ¶ 2.  On December 23, 2015, OCPP's coach posted an image of the WIN Passage to OCPP's Twitter page.  *Id.* ¶ 5; ECF 61-3, 7.  Plaintiff soon discovered the post – in January 2016.  ECF 57-3, 4–5; ECF No. 57-4, 5.

Plaintiff waited until 2017 to ask OCPP to take down this post.  On May 3, 2017, OCPP received a cease and desist letter from Plaintiff's counsel, and OCPP promptly removed the post.

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

ECF 57-1 ¶ 6; ECF 61-9, 2.  OCPP declined to pay Plaintiff the exorbitant amount – $25,000 – he demanded as compensation for OCPP's single Twitter post which was, essentially, a handout to the team.  *Id.*[1]  How could such a post – a handout for educational purposes – not be fair use?

After Plaintiff originally sent a demand letter, his then counsel explained to OCPP's counsel that he was focusing on swim teams because he believed that they had insurance coverage that would provide a defense to Plaintiff's claims.  [Meckes Decl. ¶¶ 3-4].  Plaintiff's counsel at the time even went so far as to suggest that OCPP tender the defense to its carrier to see if OCPP could come up with money to settle.  [*Id.* at ¶ 4].

Approximately two years later, on March 11, 2019, Plaintiff filed suit against OCPP alleging copyright and trademark infringement.  The Complaint, exhibiting a document that only later was confirmed to bear a February 2016 timestamp, suggested that the statute of limitations had run but did not make this clear on its face.  Compl.  To the contrary, the Complaint alleged "[a]t least as late as February 19, 2018, Defendant's posting of the WIN Passage remained on its Twitter page."  *Id.* ¶ 25.  .

Because the facts as alleged in the Complaint were insufficient to support a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), OCPP was forced to proceed with discovery.  Although OCPP's representatives believed they had taken down the post on or around May 4, 2017, Plaintiff alleged otherwise.  If Plaintiff's allegations were true, it would mean that, somehow, OCPP had posted the WIN Passage again.  As far as OCPP knew, that did not happen. Despite Plaintiff's counsel's Rule 11 obligation to investigate the evidentiary basis for their allegations, nothing in the Complaint was equivocal.  Thus, Plaintiff put OCPP in the difficult position of moving to dismiss claims that, on their face, might plausibly allege conduct during the relevant limitations period.  And the Complaint alleged trademark infringement claims unsupported by evidence that would require developing a factual record to obtain summary judgment.  ECF 65 at 12.

---

[1] This amount, as discovery and expert analysis would reveal, bears no relation to value of Plaintiff's copyright but instead appears to reflect his best estimate of nuisance of his lawsuits. *See* ECF 57-6, 13-14; *see also* Bell Tr. at 84:6-85:4 [RLO Decl. ¶3, Ex. A].  According to discovery in the Related Case, Plaintiff has no documents used to create his fee schedule.  *See* [Wager Decl. ¶ 5, Ex. A, RFP 52].

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

1   Shortly after filing the case, Plaintiff sought to have it related to another case he filed in

2   the Northern District of California: *Bell v. Pacific Ridge Builders, Inc., et al.*, 4:19-cv-01307

3   ("Related Case").  This is one of many similar cases Plaintiff has filed across the country.

4   OCPP proceeded to discovery.  Plaintiff's responses to OCPP's first round of written

5   discovery were vague and evasive.  For example, when asked to state all facts supporting his

6   allegation that OCPP's post remained on Twitter on February 19, 2018, Plaintiff referred to his

7   entire then 800 plus page document production.  Response to Interrogatory No. 3, ECF 57-4 at 2.

8   Plaintiff also refused to appear voluntarily in this District, forcing OCPP to seek and

9   obtain an order compelling him to appear.  *See* ECF 32, ECF 34.

10   Meanwhile, despite numerous efforts to meet and confer, Plaintiff continually delayed

11   providing updated interrogatory responses.  [RLO Decl. ¶8, Ex. D].  Plaintiff provided

12   supplemental responses only at 10:20 PM the night before his deposition.  *Id.*  At his deposition,

13   Plaintiff confirmed that his sole basis for claiming that the post was up in February 2018 was a

14   screenshot from a third party website – a website that purports to archive other websites.  *See*

15   Supplemental Response to Interrogatory No. 3, ECF 57-4 at 2.[2]  Plaintiff had no reason to

16   conclude the website had anything to do with OCPP.[3]

17   Despite Plaintiff's evasive answers, the deposition finally clarified that Plaintiff's

18   copyright claim was time-barred and his trademark claim lacked objective merit.  Thus, it is clear

19   that Plaintiff made demonstrably false allegations in his Complaint specifically in order to create

20   a situation where OCPP potentially faced months (or years) of litigation before it could vindicate

21   its rights.[4]  Based on facts uncovered in discovery, OCPP's counsel notified Plaintiff's counsel

22

23

24

25

26   [2] The purported archive date was not in 2018 either.  *Id.*

27   [4] Plaintiff's deposition also revealed that the licensing model used by his expert and cited as the

28   basis for the demands made in his various demand letters had never been used outside of
     litigation.  Bell Tr. at 84:6-85:4 [RLO Decl. ¶3, Ex. A].

- 3 -

1   that there were significant Rule 11 issues with his Complaint.  *See* Rule 11 Email, [RLO Decl. ¶9,

2   Ex. E].[5]  As of that time, significant time had been invested in debunking Plaintiff's claims.[6]

3       Shortly after OCPP served its Rule 11 Motion, Plaintiff's counsel sought to withdraw

4   from the case.  ECF 37, 2; ECF 36, 2.  Thereafter, Plaintiff caused a great deal of unnecessary

5   confusion.  Even though Plaintiff's new counsel, Adam Urbanczyk, appeared at Plaintiff's

6   deposition in November 2019, Plaintiff did not successfully substitute his counsel until February

7   2020.

8       Rather than ask the Court for leave to withdraw the affected pleadings, Plaintiff doubled

9   down on his false allegation and used it as a basis for his summary judgment papers.  ECF 45; 60;

10  65 at 10 ("Bell argues that a third party's 2016 archiving of OCPP's website and Gimbutis's

11  deletion of the post in 2017 constituted additional infringing acts.").  Once Plaintiff had clarified

12  his representation, OCPP cross-moved for summary judgment arguing that Plaintiff's copyright

13  claim was time-barred and his trademark claim was insupportable.  ECF 57.

14      On May 4, 2020, the Court granted OCPP's motion for summary judgment on the

15  copyright and trademark infringement claims.  *See* ECF 65.  The Court determined that Plaintiff

16  failed to show "a genuine dispute of material fact as to OCPP's statute of limitations defense" as

17  Plaintiff failed to present evidence "that OCPP engaged in any acts of copyright infringement

18  after its December 2015 Twitter post."  ECF 65 at 10.  As for the trademark infringement claim,

19  the Court determined that Plaintiff failed to present any evidence demonstrating commercial use.

20  *Id.* at 12.  The clerk entered judgment on May 4, 2020.  *See* ECF 66.

21

22

23

24  [5] OCPP prepared and served a Rule 11 motion.  [RLO Decl. ¶10, Ex. F]. OCPP, however, is not
    moving for relief under Rule 11 because Plaintiff's false allegation proved immaterial to the
25  Court's decision.  Nonetheless, OCPP's unfiled Rule 11 Motion bears on the present motion since
    it demonstrates Plaintiff's reckless litigation behavior and the work necessary to overcome
26  Plaintiff's false allegation.

27  [6] As of November 27, 2019, OCPP's counsel had expended 191.27 hours, *see* Billing Records,
28  [RLO Decl. ¶16, Ex. I], and $1,443.00 for the cost of the deposition, *see* Bill of Costs, ECF 67.

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

OCPP's MOTION FOR ATTORNEYS' FEES
4:19-cv-01308-JST

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

Before and during the course of these proceedings, numerous other defendants have faced similar lawsuits and litigation tactics from Plaintiff.[7]

In the Related Case, Plaintiff:

- Asserted (and lost) a claim for vicarious copyright infringement that Plaintiff did "not even attempt" to substantiate.  Related Case ECF 31, 11.

- Asserted (and lost) a trademark claim, which though "a rare situation," merited dismissal because no confusion was possible.  Related Case ECF 31, 14.

- Plaintiff objected to providing the deposition transcript from this case to the Related Case defendants.  After having sought, over objection, to relate the cases for reasons of judicial economy, ***Plaintiff claimed that the deposition transcript in this matter is not relevant to the Related Case***.  [Wager Decl. ¶ 3].

- Produced certain relevant materials only in the Related Case. [Wager Decl. ¶ 4; RLO Decl. ¶4, Ex. B].

- Failed timely to produce an expert report.  [Wager Decl. ¶ 8].

In other cases, Plaintiff has exhibited further unreasonable claims and unreasonable litigation positions that reflect his motivation to exploit the Court system for quick settlements:

- In *Bell v. Granite School District*, 2:19-cv-00209 (D. Utah), Plaintiff brought a nearly identically time-barred copyright claim against a Utah School District.  *See Granite School District*, ECF 20, 8-12.

- In that same case, Plaintiff demanded an exorbitant settlement, and then, faced with a defense, begged off for $600.  [RLO Decl. ¶17, Ex. J at 5, 16, 54].

- In *Bell v. Caught My Eye Photography, et al.*, 2:18-cv-00961 (S.D. Ohio), Plaintiff apparently sued the wrong parties, failed to substantiate claims for vicarious liability, and relied on third-party websites to try to substantiate claims against an Ohio School District.  *Caught My Eye Photography*, ECF 56 at 2-3, 5.

---

[7] In addition to the above, Plaintiff has declined to admit obvious facts, such as he has declined to admit that the CEO of a construction company is not his competitor.  *See* [Wager Decl. ¶ 6, Ex. B].  Plaintiff also denied that the WIN Passage and the poster containing the WIN Passage are widely available on the internet and available on his website.  *See* [Wager Decl. ¶ 6, Ex. B].

OCPP's MOTION FOR ATTORNEYS' FEES
4:19-cv-01308-JST

- By the time of his deposition, Plaintiff had obtained nuisance-value settlements from **95** targets totaling approximately $880,000.  *See* Bell Tr. at 46:15-48:2 [RLO Decl. ¶3, Ex. A]; *see also* ECF 57-7 at 3.

## ARGUMENT

## I. AN AWARD OF ATTORNEYS' FEES IS APPROPRIATE UNDER THE COPYRIGHT ACT.

Under the Copyright Act, a court may "award a reasonable attorney's fee to the prevailing party as part of the costs."  17 U.S.C. § 505.  The Copyright Act allows successful defendants to recover attorneys' fees because "meritorious copyright defenses should be encouraged . . . to the same extent plaintiffs are encouraged to litigate meritorious claims of infringement."  *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 527 (1994).

In exercising its discretion, the Court should consider "the totality of circumstances in a case."  *Kirtsaeng*, 136 S.Ct. at 1985.  Among other things, the Court should consider the following non-exhaustive factors: "the degree of success obtained; frivolousness; motivation; objective unreasonableness (both in the factual and legal arguments in the case); and the need in particular circumstances to advance considerations of compensation and deterrence."  *Halicki Films, LLC v. Sanderson Sales & Mktg.*, 547 F.3d 1213, 1230 (9th Cir. 2008).  Significant weight is afforded to both the degree of success and unreasonableness prongs, as the latter may stand in for furthering the purposes of the Act.  *Kirtsaeng*, 136 S.Ct. at 1985.  Burdensome litigation tactics can also be a basis for fees.  *Gen. Universal Sys. v. Lee*, 379 F.3d 131, 148 (5th Cir. 2004).

### A. OCPP Prevailed on Summary Judgment on Each Cause of Action.

Courts consider a party's degree of success in determining whether to award attorneys' fees.  *Fantasy v. Fogerty*, 94 F.3d 553, 556 (9th Cir. 1996).  Though not dispositive, the weight afforded to this factor is substantial.  *See Kirtsaeng*, 136 S.Ct. at 1986.[8]

---

[8] While this factor "weights more in favor or a party who prevailed on the merits rather than on a technical defense," *DuckHole Inc. v. NBCUniversal Media LLC*, 2013 WL 5795204, at *2 (C.D.Cal. Oct. 25, 2013), that technicality is less impactful where a defendant obtains "total success." *Choyce v. SF Bay Area Indep. Media Ctr.*, 2014 WL 5597274, at *4 (N.D. Cal. Nov. 3, 2014); *Epikhin v. Game Insight N. Am.*, 2016 WL 1258690, at *4-5 (N.D.Cal. Mar 31, 2016).

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

The Court granted OCPP's motion for summary judgment on all claims and denied Plaintiff's motion for summary judgment in full.  ECF 65.  OCPP achieved an unqualified, complete dismissal of Plaintiff's suit.  The statute of limitations was not the OCPP's sole defense[9] but Plaintiff's claims were so clearly time-barred that this defense could not be ignored.

This factor weighs in favor of granting OCPP reasonable attorneys' fees.

## B.   Awarding Fees For Plaintiff's Unreasonable Litigation Positions Would Further The Purposes Of The Copyright Act.

The Copyright Act's primary objective is to "enrich[] the general public through access to creative works."  *Fogerty*, 510 U.S. at 527.  Baseless claims do not further that purpose.  Accordingly, awarding attorney's fees to make an example of a plaintiff that abuses the system furthers that purpose:

> When a litigant—whether plaintiff or defendant—is clearly correct, the likelihood that he will recover fees from the opposing (i.e., unreasonable) party gives him an incentive to litigate the case all the way to the end. . . . [W]hen a person . . . has an unreasonable litigating position, the likelihood that he will have to pay two sets of fees discourages legal action.  The copyright holder with no reasonable infringement claim has good reason not to bring suit in the first instance (knowing he cannot force a settlement and will have to proceed to judgment); and the infringer with no reasonable defense has every reason to give in quickly, before each side's litigation costs mount.  All of those results promote the Copyright Act's purposes, by enhancing the probability that both creators and users (i.e., potential plaintiffs and defendants) will enjoy the substantive rights the statute provides.

*Kirtsaeng*, 136 S. Ct. at 1986–87.

Objective unreasonableness is evaluated "both in the factual and legal components of the case."  *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1120 (9th Cir. 2007), quoting *Fogerty*, 510 U.S. at 534 n. 19.  Here, the statute of limitations is obvious[10] – three years from when the

---

[9] OCPP had hoped to prevail on fair use at trial.  *Bell v. Magna Times, LLC*, 2019 WL 1896579, *2-6 (D. Utah April 29, 2019) (granting motion to dismiss reporter defendant on fair use grounds for quoting a speech in a news article); *Bell v. Moawad Group, LLC*, 326 F.Supp.3d 918 (D. Ariz. 2018) (denying motion for summary judgment on fair use given factual nature of inquiry).

[10] When the result is obvious or the arguments are without merit, a case is deemed frivolous. *Karam v. City of Burbank*, 352 F.3d 1188, 1195 (9th Cir. 2003).

OCPP's MOTION FOR ATTORNEYS' FEES
4:19-cv-01308-JST

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

copyright holder knows of a violation.  17 U.S.C. § 507(b); *see also Media Rights Tech., Inc. v. Microsoft Corp.*, 922 F.3d 1014, 1022 (9th Cir. 2019).

Compelling evidence shows that Plaintiff intentionally chose to put a false allegation into his Complaint to overcome the obvious time bar.  [*See* Compl. ¶ 25; RLO Decl. ¶10, Ex. F (Rule 11 Motion)].  This is not just unreasonable, it is, *at a minimum*, improper.  Even worse, caught red-handed, Plaintiff chose to double down, arguing without a shred of evidence that OCPP uploaded the original post to an archive website within the limitations period in a failed effort to avoid summary judgment. [11]

Plaintiff's claims were unreasonable from the beginning.  *See InveSys, Inc. v. McGraw-Hill Cos.*, Ltd., 369 F.3d 16, 21 (1st Cir. 2004) (affirming fee award where a party "knew at the outset of the raw facts" undermining his position).  Plaintiff compounded that initial unreasonable litigation position by trying to obscure the infirmity of his claim, failing to acknowledge controlling law about discovery, and failing to follow the local rules.  As Plaintiff's copyright claim was stale and his arguments were without merit, this factor weighs heavily in favor of awarding OCPP reasonable attorneys' fees.

### C.    Money, Not Protecting His Rights, Motivates Plaintiff Here.

The Copyright Act is not a vehicle for extracting quick settlements.  *See Lewis v. Activision Blizzard, Inc.*, 2014 WL 4953770, at *3 (N.D.Cal. Sept. 25, 2014), *aff'd Lewis v. Activision Blizzard, Inc.*, 634 Fed.Appx. 182 (9th Cir. 2015); *see also Coles v. Wonder*, 283 F.3d 798, 803 (6th Cir. 2002).  Plaintiffs are permitted to protect their creative works but Plaintiffs are not permitted to use the specter of litigation to extract disproportionate settlements:

> However, in light of the fact that this case was objectively unreasonable, the tactics and strategies pursued by Plaintiff and his attorneys can be interpreted as seeking to force a settlement with a wealthy songwriter with little or no basis for doing so. Moreover, it tends to show that the strategies employed were simply puffing.

*Coles*, 283 F.3d at 803.

---

[11] Notably, Plaintiff never attempted – through written discovery or any form of deposition – to confirm his bogus narrative that OCPP was somehow behind the archiving of this site. *See generally* [RLO Decl. ¶4, Ex. B].

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

1    Plaintiff's motive to force OCPP to choose between spending money to defend this case

2    or paying Plaintiff can be inferred from Plaintiff's conduct.  Plaintiff continually doubled down

3    on making this case more burdensome on OCPP.

4    Proving intent rarely involves direct evidence.  Yet Plaintiff's actions demonstrate that his

5    motivation is exclusively money and he files claims seeking money regardless of the merits.

6    After Plaintiff originally sent a demand letter, his then counsel explained to OCPP's counsel that

7    he was focusing on swim teams because he believed that they had insurance coverage that would

8    provide a defense to Plaintiff's claims.  [Meckes Decl. ¶¶ 3-5].  He even went so far as to suggest

9    that OCPP tender the defense to its carrier to see if OCPP could come up with money to settle.

10   [Meckes Decl. ¶ 4, Ex. B].  This mirrors Plaintiff's approach in Utah, where the settlement

11   demands are somewhat uniquely publicly available.  *See* [RLO Decl. ¶17, Ex. J, 1-5].  Plaintiff is a

12   professional litigant, having filed over 26 lawsuits claiming infringement since 2006.

13   Additionally, he has received settlements from at least 90 different alleged infringers across the

14   country–all relating to the WIN Passage.  This conduct does not further the purposes of the

15   Copyright Act and should be deterred with a fee award.  *See Perfect 10, Inc. v. Giganews, Inc*.,

16   No. CV 11-07098-AB (SHx), 2015 U.S. Dist. LEXIS 54063, at \*24 (C.D. Cal. Mar. 24, 2015)

17   (awarding fees against Plaintiff who has filed 20-30 lawsuits, has never litigated a case to

18   judgment, and maintains copyrights apparently for the purposes of litigation).

19   Plaintiff's litigation strategy and the licensing model he intended to rely on in this case are

20   a shakedown scheme.  His demands do not reflect the value of the work.  Plaintiff has never used

21   his licensing model in a business negotiation, only in connection with litigation.  *See* ECF 57-6 at

22   12–14 ("In this case, Dr. Bell has also not provided any licensing agreements or accounting data

23   establishing that even one entity has paid his stated licensing rates outside of threatened

24   litigation.").  Plaintiff's strategy appears to be to demand an immediate settlement, from an

25   insurance carrier, for an amount that is just cheap enough to discourage the defendant from

26   mounting a fair use defense.  ECF 57-6 at 14–15.  His business model thus exploits a weakness in

27

28

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

- 9 -

the judicial system: Defending lawsuits costs a disproportionate amount of money regardless of the merits of the case.[12]  As explained by Plaintiff's expert Daniel Werner:

> Dr. Bell has provided documentary evidence of past settlement agreements resolving intellectual property litigation initiated by Dr. Bell and several licensing agreements described as "settlements resulting from enforcement of intellectual property rights."  However, these documents do not reflect the market value of a licensing agreement for the WIN Passage between two willing parties.  Instead, these agreements merely reflect the cost of litigation. . . . [E]ven if a defendant knows a lawsuit has no merit, it is economically rational for a defendant to pay a settlement to the plaintiff in an amount up to the cost of the defense.

*Id.* at 13.

After researching market rates for social media posts, Daniel Werner opined on the market value of a license to Plaintiff's copyrighted passage:

> The results of my analysis show an average rate of $12.83 for electronic posting of a short passage from a best-selling sociology book to an audience of 39 members. . . . Clearly, Dr. Bell's stated licensing rate [including a $20,000 initiation fee and a $5,000 monthly fee] is unreasonably high when compared to typical market rates.

*Id.* at 15.

Further, countless similar posts of the WIN Passage remain on social media.  Whether purposeful or not, this provides Plaintiff with a greater opportunity to gain more money by shaking down those who repost the WIN Passage.

To be clear, there is nothing inappropriate about suing to enforce your copyright.  Here, however, Plaintiff has been not seeking to enforce his copyright but rather to use the legal system to extort windfalls in the form of nuisance value settlements.  Thus, Plaintiff is obtaining windfall after windfall and extracting far more than his copyright is worth.

This factor too weighs in favor of an award of attorneys' fees.

**D.      An Award Of Attorneys' Fees Is Necessary To Deter Future Shakedowns.**

Although courts often lack the necessary evidence to support deterrence, the direct evidence here is compelling.  *See SellPoolSuppliesOnline.com LLC v. Ugly Pools Ariz., Inc.*,

---

[12] Plaintiff's claims could be a paradigmatic case for a copyright small claims process, if one ever gets established.  https://www.copyright.gov/docs/smallclaims/

- 10 -

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

1    2019 WL 1118206, *7 (D. Ariz. Mar. 11, 2019) (*aff'd SellPoolSuppliesOnline.com, LLC v. Ugly*

2    *Pools Ariz., Inc.*, 2020 WL 1527774 (9th Cir. Mar. 31, 2020).

3            Plaintiff brought an objectively unreasonable and stale copyright infringement claim and a

4    trademark claim that had no basis in reality.  This, however, is not the only time Plaintiff has done

5    so.  Plaintiff just settled another case for $600 with a nearly identical factual posture: he

6    discovered the alleged infringement in January of 2016 but waited until March 2019 to file suit.

7    *See Bell v. Granite School District*, ECF 20.

8            Just as in the *Bell v. Granite School District*, here, Plaintiff again exhibited what has been

9    his pattern and practice across the nation for numerous years–file a meritless claim and then seek

10   an immediate settlement to make it go away.  *See* Plaintiff's Demand Letter [Meckes Decl. ¶ 3,

11   Ex. A]; *Bell v. Granite School District*; *see also Bell v. Caught My Eye Photography*, ECF 49.  In

12   other words, Plaintiff has a demonstrated practice of using litigation to obtain nuisance value

13   settlements for meritless claims.  Bell Tr. at 84:6-85:4 [RLO Decl. ¶3, Ex. A].  An award of

14   attorneys' fees will deter Plaintiff and others like him from engaging in such conduct.

15          Once in litigation, Plaintiff seeks to impose so much work on his adversary that they

16   eventually throw up their hands in frustration and concede to his demands.  Here, Plaintiff

17   asserted baseless objections and stonewalled in discovery for months.  *See* [RLO Decl.¶8; Ex. D;

18   ECF 34].  By way of example, not only did Plaintiff force OCPP to fight for months to obtain

19   discovery support for its statute of limitations defense, Plaintiff designated both his expert report

20   and a deposition from a prior case highly confidential, but was unable to articulate any

21   sufficiently particular reasons for doing so.[13]  [RLO Decl. ¶6, Comp. Ex. C].  His conduct,

22   outlined above, in the Related Case has been similar.

23          An award of fees is necessary to deter this pattern of conduct.  This prong also weighs in

24   favor of an attorneys' fee award.

---

28   [13] The deposition transcript from the *Moawad* case thus lost any confidentiality by operation of
     the confidentiality order in this case.  ECF 30 ¶ 5.2.

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

1    **II.      OCPP IS ENTITLED TO ATTORNEYS' FEES UNDER THE LANHAM ACT.**

2            Under the Lanham Act, attorneys' fees are awarded in "exceptional cases."  15 U.S.C. §

3    1117(a); *Halicki Films*, 547 F.3d at 1231.  A case is considered exceptional if a plaintiff's case is

4    "groundless, unreasonable, vexatious, or pursued in bad faith."  *Stephen W. Boney, Inc. v. Boney*

5    *Servs., Inc.* 127 F.3d 821, 827 (9th Cir. 1997).  Trademark law "prevents only unauthorized uses

6    of a trademark in connection with a *commercial transaction* in which the trademark is being used

7    to confuse potential consumers."  *Bosley Med. Inst. v. Kremer*, 403 F.3d 672, 676 (9th Cir. 2005)

8    (emphasis added).

9            Plaintiff's trademark infringement claim was unreasonable because he was unable to show

10   commercial use.  How could he have ever shown commercial use in his pursuit of an entity that

11   does not compete with him?  Unsurprisingly, at summary judgment, Plaintiff failed to present any

12   evidence to demonstrate that OCPP offered a competing service or goods of any kind.  The Court

13   reasoned that "[w]ithout any evidence that OCPP used Bell's trademark in association with

14   competing goods or services, Bell has not met his burden of production as to his trademark

15   claim."  ECF 65 at 13.  As Plaintiff did not have the evidence necessary to support his trademark

16   infringement claim, his claim was unreasonable.  *See also* Related Case ECF 31, 14 (dismissing

17   trademark claim in a manner that only occurs in "rare situation[s]").

18           Therefore, the Court should award OCPP its attorneys' fees under the Lanham Act.

19   **III.     OCPP IS ENTITLED TO THE FULL AMOUNT OF FEES SOUGHT.**

20           OCPP's counsel expended approximately 345 hours litigating this matter to judgment.

21   *See* [RLO Decl. ¶¶1-17, esp. 18, 19-21].  At SPB's normal, market rates, that would total over

22   $170,000.  Given the outcome and Plaintiff's litigation tactics, this is a reasonable amount of fees.

23   Yet, bearing in mind the value and relative lack of complexity of the case, OCPP seeks only

24   $120,000.[14]  In addition, OCPP is also seeking costs under a separate Bill of Costs.  *See* Bill of

25   Costs, ECF 67.

---

26   [14] This amount does not include the work performed, also on a *pro bono* basis, by OCPP's expert
     Daniel Werner.  That work was necessary to rebut Plaintiff's own expert report.  Those fees
27   would have run $53,336.25 at the rates typically charged by Mr. Werner's firm, NERA.  [RLO
     Decl. ¶13, G].  These expenses too ought to be considered in awarding a fee – every defendant
28   facing suit brought by Plaintiff must decide whether to retain such an expert.  This adds to the

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

OCPP's MOTION FOR ATTORNEYS' FEES
4:19-cv-01308-JST

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

The "lodestar" calculation is used to determine reasonable attorneys' fees. *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013). "Under the lodestar method, the district court 'multiplies the number of hours the prevailing party reasonably expended by a reasonable hourly rate.'" *Id.*, quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).[15]

A party seeking fees should provide (1) billing records, (2) counsel's hourly rate, and (3) evidence demonstrating that counsel's hourly rate is reasonable for an attorney of comparable skill and experience. *See Discovery Commn'cs v. Animal Planet, Inc.*, 172 F.Supp.2d 1282, 1292 (C.D. Cal. 2001). In addition, the Court should analyze the following factors:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975).

Further, OCPP's award of attorneys' fees should also include fees for this motion as "statutory fee award provisions should be read as authorizing compensation for time spent litigating fee awards." *In re Nucorp Energy*, 764 F.2d 655, 660 (9th Cir. 1985). OCPP's counsel will document this time in connection with its reply brief.

**A.    The Time Spent By OCPP's Counsel Is Reasonable.**

To determine whether the number of hours expended was reasonable, the Court should consider "whether, in light of the circumstances, the time could reasonably have been billed to a private client." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008). "[T]he most

---

nuisance value Plaintiff can extract. Where Plaintiff's claims are meritless from the outset, this is unjust.

[15] "Attorneys' fees are recoverable by *pro bono* attorneys to the same extent that they are recoverable by attorneys who charge for their services." *Legal Voice v. Stormans, Inc.*, 757 F.3d 1015, 1017 (9th Cir. 2014); *see also Blanchard v. Bergeron*, 489 U.S. 87, 94 (1989) ("[W]here there are lawyers or organizations that will take a plaintiff's case without compensation, that facts does not bar the award of a reasonable fee.").

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

1  critical factor" in determining the reasonableness of a fee award "is the degree of success

2  obtained." *Hensley*, 461 U.S. at 436.  OCPP's counsel was successful in defending against all of

3  Plaintiff's claims.  Therefore, the amount of fees sought by OCPP is "reasonable in relation to the

4  results obtained." *Id.* at 440.

5       "By and large, the court should defer to the winning lawyer's professional judgment as to

6  how much time he was required to spend on the case." *Moreno*, 534 F.3d at 1112.  OCPP's

7  counsel expended 345.67 hours defending and defeating Plaintiff's claim.  *See* [RLO Decl. ¶¶1-

8  18, *esp*. 15, 18, Ex. H].  Discovery was conducted (thousands of pages were produced and

9  reviewed), the location of Plaintiff's deposition was litigated, and Plaintiff's deposition was

10  taken.  *Id.*  Further, the time spent in opposing Plaintiff's motion for summary judgment and

11  preparing OCPP's cross-motion for summary judgment was reasonable as OCPP ultimately

12  prevailed on summary judgment for both claims.  *Id.*; ECF 65.

13       As noted above, OCPP has already drastically discounted the fees sought from what could

14  be awarded based only on SPB's time and its standard rates.  Among other things, this discount

15  (over)compensates for instances where SPB used this case to afford junior attorneys more "stand

16  up time."  For instance, some of the time, such as having more than one attorney at a deposition

17  in a case of this size, though helpful, might not have been spent had a client been paying for all

18  work on an hourly basis.  SPB is not charging for that time.  [RLO Decl. ¶16, Ex. I].  As

19  described above, however, much of the time SPB spent on this matter involved dealing with

20  Plaintiff's unreasonable positions: filing a stale claim, fighting about the location of his

21  deposition, failing to provide clear discovery responses, being evasive at his deposition, and

22  failing to comply with the local rules in to choosing counsel.  That time would have been

23  unavoidable, as Plaintiff intended.

24       Moreover, OCPP is also permitted to recover for "claims and defenses that ultimately

25  proved unnecessary." *Micromesh Tech. Corp. v. American Recreation Prods., Inc.*, 2007 WL

26  2501783, at *10 (N.D. Cal. Aug. 30, 2007).  A Rule 11 motion was prepared and sent to

27  Plaintiffs' counsel, but counsel for OCPP declined to file it as Plaintiff's false statement in the

28  Complaint turned out to be immaterial to his statute of limitations argument.  [RLO Decl. ¶10,

- 14 -

1   Ex. F]; ECF 65 at 10.  In other words, Plaintiff avoided Rule 11 only by lying ineffectually.

2   Therefore, even though the Rule 11 motion was not formally filed except as an exhibit here, the

3   effort expended should still be recoverable.

4         Accordingly, OCPP's request is reasonable in light of the result obtained.

5         **B.      OCPP's Counsel's Billing Rates Are Reasonable.**

6         The reasonableness of an attorney's hourly rate is measured by its fair market value.

7   *Blum v. Stenson*, 465 U.S. 886, 895 (1984).  "In determining a reasonable hourly rate, the district

8   court should be guided by the rate prevailing in the community for similar work performed by

9   attorneys of comparable skill, experience, and reputation."  *Chalmers v. City of Los Angeles*, 796

10  F.2d 1205, 1210–11 (9th Cir. 1986).  Courts generally consider the market of the "forum in which

11  the district court sits."  *Camacho v. Bridgeport Fin., Inc.* 523 F.3d 973, 979 (9th Cir. 2008).

12        The District Court of the Northern District of California sits in the San Francisco Bay

13  Area.  OCPP's counsel's billing rates are comparable to other similar San Francisco Bay Area

14  firms and other San Francisco Bay Area attorneys with similar experience and reputation.  [RLO

15  Decl. ¶¶22-29; Meckes Decl. ¶¶8-12; Cockrum Decl. ¶2].  Therefore, it is reasonable to calculate

16  OCPP's attorneys' fees using SPB's rates, which are comparable to typical San Francisco Bay

17  Area market rates.  *See also Perfect 10, Inc.*, No. CV 11-07098-AB (SHx), 2015 2015 U.S. Dist.

18  LEXIS 54063, at *42 (finding similar rates reasonable in California).

19        **C.      Courts Have Awarded Comparable Fees In Comparable Cases.**

20        In *Maljack Products, Inc. v. GoodTimes Home Video Corp.*, 81 F.3d 881, 890 (9th Cir.

21  1996), the Ninth Circuit affirmed the district court's award of fees in the amount of $162,175.04

22  after granting summary judgment.  In *Superior Consulting Servs., Inc. v. Steeves-Kiss*, 2018 WL

23  2183295, at *5 (N.D.Cal. May 11, 2018), the court noted that "district courts in Northern

24  California have found that rates of $475–$975 per hour for partners and $300–$490 for associates

25  are reasonable."  Moreover, this Court has awarded 75% of counsel's fees and costs, totaling

26  $87,835, on frivolous copyright claims against two defendants that were adjudicated on a motion

27  to dismiss.  *Choyce*, 2014 WL 5597274, *6–7.  Therefore, the rates for OCPP's counsel are

28

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

- 15 -

1    reasonable for comparable San Francisco Bay Area attorneys, and the total amount of fees sought

2    are also reasonable.

3         **D.    OCPP Has Satisfied Its Meet And Confer Requirement.**

4         Counsel for OCPP has met and conferred with Plaintiff's counsel as required under

5    Northern District Local Rules, Rule 54-5.  [RLO Decl. ¶30, Ex. L].  The parties were unable to

6    informally resolve the issue of attorneys' fees.  *Id*.

7                              **CONCLUSION**

8         For the foregoing reasons, OCPP requests that the Court grant OCPP's Motion for

9    Attorneys' Fees and Costs in the amount requested and any additional amount required for a reply

10   brief and/or hearing on this motion.

11   Dated:  May 18, 2020                    Squire Patton Boggs (US) LLP

12

13                                           By:/s/ *Rafael M. Langer-Osuna*
                                             _____
14                                                 Rafael M. Langer-Osuna
                                             Attorneys for Defendant
15                                           The Oakland Community Pools Project, Inc.

16

17

18

19

20

21

22

23

24

25

26

27

28

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111