EXHIBIT A

1      UNITED STATES DISTRICT COURT

2      NORTHERN DISTRICT OF CALIFORNIA

3

4              ---o0o---

5  KEITH F. BELL, PH.D.,          )

6       Plaintiff,                )

7    vs.                          )    No. 4:19-CV-01308-JST

8  THE OAKLAND COMMUNITY POOLS    )

9  PROJECT, INC. and DOES 1 to    )

10  20,                           )

11       Defendants.              )

12  _____)

13

14

15

16

17      DEPOSITION OF KEITH F. BELL, PH.D.

18        THURSDAY, NOVEMBER 21, 2019

19

20

21

22

23

24  Job No. 171137

25

1    have to sue at least a dozen nonprofit entities?

2              MR. URBANCZYK:  Object as to form.

3              THE WITNESS:  I don't think I have to sue

4    them.

5    BY MR. LANGER-OSUNA:

6        Q    I completely agree with that.  Why did you sue

7    them?

8        A    I sued them because they pirated my work, and

9    it's the only recourse I have.

10       Q    How much money have you made in settlements

11   suing these entities?

12             MR. URBANCZYK:  Objection.

13             THE WITNESS:  I don't know.

14   BY MR. LANGER-OSUNA:

15       Q    I've done a calculation, and I don't know that

16   I have the full picture because I can't trust what

17   you've told me or what you've given me.  However, based

18   on what you did give me, I calculated that you have

19   earned over $800,000 from these lawsuits.

20             Does that sound wrong to you?

21       A    I don't know what you calculated or how you

22   calculated.

23       Q    I added up the settlement numbers in your

24   settlement agreements --

25       A    Yeah.

1    Q    -- and the result was over $800,000 worth of

2    settlements.

3    A    So?

4    Q    Does that number sound incorrect to you?

5    A    I don't know whether it's incorrect or not.

6    Q    And you've earned in settlement over $500,000

7    since January 2018 alone.

8         Are you aware of that?

9    A    No.  I don't know exactly.

10    Q    Do you believe you've made over $800,000 in

11    settlements in filing lawsuits for people who have -- in

12    your words -- pirated your work?

13         MR. URBANCZYK:  Object as to form.

14         THE WITNESS:  I believe I earned -- "earned"

15    isn't the right -- I'm confused by the word "earn"

16    there.  I believe that I collected a -- that's really

17    distracting.

18         MR. MECKES:  You can answer the question, sir.

19         THE WITNESS:  I believe that I collected a

20    very small portion of what was owed by people taking my

21    work without permission and -- and distributing it to

22    others and displaying it to others.

23    BY MR. LANGER-OSUNA:

24    Q    What's the basis of believing that was a very

25    small proportion?

1    A    Because I believe they should have paid for

2  what they took.

3    Q    How much have you earned in royalties on your

4  work in "Winning Isn't Normal"?

5    A    Royalties?  I don't know.

6    Q    Do you have any idea?

7    A    I don't know.

8    Q    Is it anywhere near $800,000?

9    A    What do you mean by "royalties"?

10    Q    The fees that you are receiving from the

11  seller of your book.  Hold on.  Well, let's back up

12  entirely.

13         What do you understand "royalties" to mean?

14    A    I don't know if I can answer that completely.

15    Q    Answer it partially.

16    A    Licensing fees would be one thing.

17    Q    Your book, "Winning Isn't Normal," is

18  published by Keel Publications; is that right?

19    A    Yes.

20    Q    Is that an entity you formed?

21    A    Yes.

22    Q    Does anyone else own any part of

23  Keel Publications?

24    A    Pardon?

25    Q    Does anyone else own any part of

1    have the right to do that, yeah.

2        Q    Have you ever charged anyone who you found

3    using your work on the Internet a fee that didn't

4    involve a threat of litigation?

5        A    Have I ever -- say that again.

6        Q    Has anyone ever asked you ahead of time, Can I

7    use this in my Twitter feed?  And you've established a

8    price for that.  Has that ever happened?

9        A    I don't think anyone has ever asked me if they

10   could use it in their Twitter feed.

11       Q    So you've never entered into a licensing deal

12   with respect to someone posting on Twitter?

13       A    I've entered into licensing fees for people to

14   use it retroactively.

15       Q    In the context of litigation, right?

16       A    In the context of litigation.  And going

17   forward in the context of litigation.

18       Q    Have you ever prospectively entered into a

19   licensing deal for the WIN Passage on any platform,

20   Twitter, Instagram, Facebook or any other social media

21   online platform?

22       A    I don't think so.

23       Q    And your answer, "I don't think so," is

24   outside of the context of litigation, correct?

25       A    I'm confused again what you're asking me.

Page 85

1    Have I ever, outside of litigation, entered into a

2    licensing fee for someone to use my work?

3          Q     Social media of any kind online.

4          A     I don't think so.

5          Q     Okay.

6                Do you know a Coach Joe Tanis?

7          A     No.  I know that a coach -- I mean, I know the

8    name, but I don't know him.

9          Q     How do you know the name?

10         A     I've seen that he's posted my work.

11                     (Deposition Exhibit 9 marked for

12                      identification.)

13   BY MR. LANGER-OSUNA:

14         Q     So what we've just marked as Exhibit 9 is a

15   screen capture of a Twitter post dating from

16   November 10th, 2015, on Joe Tanis' Twitter feed

17   @coachTanis.

18         A     Yes.

19         Q     And it features your -- it features something

20   that looks very similar to your "Winning Isn't Normal"

21   passage, correct?

22         A     Yes.

23         Q     And that post has been up since November 10th,

24   2015, correct?

25         A     Apparently.

Page 280

1        I, the undersigned, a Certified Shorthand

2   Reporter of the State of California, do hereby certify:

3        That the foregoing proceedings were taken

4   before me at the time and place herein set forth; that

5   any witnesses in the foregoing proceedings, prior to

6   testifying, were administered an oath; that a record of

7   the proceedings was made by me using machine shorthand

8   which was thereafter transcribed under my direction;

9   that the foregoing transcript is a true record of the

10  testimony given.

11       Further, that the foregoing pertains to the

12  original transcript of a deposition in a Federal Case,

13  before completion of the proceedings, a review of the

14  transcript [ ] was [X] was not requested.

15       I further certify I am neither financially

16  interested in the action nor a relative or employee of

17  any attorney or any party to this action.

18       IN WITNESS WHEREOF, I have this date

19  subscribed my name.

20

21  Dated: December 5, 2019.

22

23  _____

24      KELLI COMBS

        CSR No. 7705

25