UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEITH F. BELL, | Case No. 19-cv-01308-JST |
| Plaintiff, | |
| v. | **ORDER GRANTING MOTION FOR ATTORNEY'S FEES** |
| THE OAKLAND COMMUNITY POOLS PROJECT, INC., | Re: ECF No. 68 |
| Defendant. | |

Before the Court is Defendant Oakland Community Pools Project, Inc.'s ("OCPP") motion for attorney's fees. ECF No. 68. The Court will grant the motion.

## I.    BACKGROUND

This motion arises from an action brought by Plaintiff Dr. Keith Bell, a sports psychologist and performance consultant, against OCPP, a nonprofit organization that offers swimming opportunities to underprivileged youth. Bell sued OCPP in March 2019 over a Twitter post by OCPP's head coach, Rolandas Gimbutis, that included a passage from Bell's 1982 book *Winning Isn't Normal*. ECF No. 65 at 1-3. Bell alleged that the post infringed on his copyright and trademark rights. *Id.* at 3.

OCPP answered the complaint, ECF No. 15, and in January 2020, Bell moved for summary judgment, ECF No. 45. OCPP filed a cross-motion for summary judgment. ECF No. 57. On May 4, 2020, the Court denied Bell's motion and granted OCPP's motion, awarding OCPP summary judgment on both of Bell's claims. ECF No. 65. The clerk entered judgment in OCPP's favor. ECF No. 66.

On May 18, 2020, OCPP filed the instant motion for attorney's fees. ECF No. 68. Bell

1   opposed, ECF No. 69, and OCPP replied, ECF No. 70.[1]  The Court took the motion under

2   submission without a hearing.  ECF No. 72.

3       OCPP argues that it is entitled to attorney's fees under both the Copyright Act and the

4   Lanham Act.  The Court addresses each argument in turn before addressing the reasonableness of

5   the requested amount.

6   **II.     JURISDICTION**

7       This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

8   **III.    COPYRIGHT ACT FEES**

9       **A.     Legal Standard**

10      In "any civil action" under the Copyright Act, "the court in its discretion may allow the

11  recovery of full costs by or against any party other than the United States or an officer thereof."

12  17 U.S.C. § 505.  "Except as otherwise provided by this title, the court may also award a

13  reasonable attorney's fee to the prevailing party as part of the costs."  *Id.*  "In applying this

14  provision, district courts are charged with two tasks: first, deciding whether an award of attorneys'

15  fees is appropriate, and second, calculating the amount of fees to be awarded."  *The Traditional*

16  *Cat Ass'n, Inc. v. Gilbreath*, 340 F.3d 829, 832-33 (9th Cir. 2003) (footnote omitted).

17      In awarding fees under the statute, "[p]revailing plaintiffs and prevailing defendants are to

18  be treated alike, but attorney's fees are to be awarded to prevailing parties only as a matter of the

19  court's discretion." [2]  *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994).  "'There is no precise

20  rule or formula for making these determinations,' but instead equitable discretion should be

21  exercised 'in light of the considerations we have identified.'"  *Id.* (quoting *Hensley v. Eckerhart*,

22  461 U.S. 424, 436-37 (1983)).  "[C]ourts deciding whether to award attorney[']s fees can look to

---

[1] Bell filed an administrative motion for leave to file a sur-reply, ECF No. 73, which OCPP opposes, ECF No. 74.  Bell identifies two new pieces of evidence that he claims OCPP introduced upon reply: (1) an opinion in a case brought by Bell in the Southern District of Ohio, and (2) a statement in OCPP's attorney's declaration about settlement negotiations between the parties. ECF No. 73 at 2.  As the Court relies on neither item in the following opinion, it denies leave to file the sur-reply.

[2] Bell does not dispute that OCPP is the prevailing party on both the copyright and trademark claims.  ECF No. 69 at 5.

United States District Court
Northern District of California

five non-exclusive factors: (1) the degree of success obtained; (2) frivolousness; (3) motivation; (4) the objective unreasonableness of the losing party's factual and legal arguments; and (5) the need, in particular circumstances, to advance considerations of compensation and deterrence." *Seltzer v. Green Day, Inc.*, 725 F.3d 1170, 1180-81 (9th Cir. 2013) (citing *Fogerty*, 510 U.S. at 534 n.19). The objective unreasonableness factor is given "significant weight." *Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979, 1989 (2016).

In determining the amount of fees awardable under Section 505, the "'most useful starting point for determining the amount . . . is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.'" *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1027 (9th Cir. 1985) (quoting *Hensley*, 461 U.S. at 433). "Excluded from this fee calculation are hours that are not reasonably expended, i.e., hours that are 'excessive, redundant, or otherwise unnecessary.'" *Id.* (quoting *Hensley*, 461 U.S. at 434). "Controlling precedent establishes 'that a party entitled to attorney's fees as a prevailing party on a particular [copyright] claim, but not on other claims in the same lawsuit, can only recover attorney's fees incurred in defending against that one claim or any related claims.'" *Traditional Cat Ass'n*, 340 F.3d at 833 (internal quotation marks and citations omitted).

## B. Discussion

### 1. Degree of Success Obtained

The Court granted OCPP summary judgment on Bell's copyright claim based on the statute of limitations. ECF No. 65 at 10. An award of fees under the Copyright Act is "less justified when 'copyright defendants do not . . . reach the merits, prevailing instead on technical defenses.'" *Tresóna Multimedia, LLC v. Burbank High Sch. Vocal Music Ass'n*, 953 F.3d 638, 653 (9th Cir. 2020) (quoting *Fantasy, Inc. v. Fogerty*, 94 F.3d 553, 560 (9th Cir. 1996)). However, this factor may weigh in favor of litigants who prevail on a technical defense when they obtain "total success against the claim." *Choyce v. S.F. Bay Area Indep. Media Ctr.*, No. 13-cv-01842-JST, 2014 WL 5597274, at *4 (N.D. Cal. Nov. 3, 2014); *compare Epikhin v. Game Insight N. Am.*, No. 14-cv-04383-LHK, 2016 WL 1258690, at *4-5 (N.D. Cal. Mar. 31, 2016) (finding degree-of-success factor weighed against fee-shifting where dismissal was without prejudice).

United States District Court
Northern District of California

While OCPP prevailed on a technical defense, it obtained summary judgment on the entirety of the claim and had judgment entered in its favor.  Accordingly, this factor weighs in favor of fee-shifting.

### 2.  Frivolousness

At some point in time, Bell might have had a valid copyright claim against OCPP.  His copyright in the passage posted to OCPP's Twitter feed was not disputed.  However, as discussed in the Court's summary judgment order, that claim was extinguished in January 2019, when the statute of limitations expired.  ECF No. 65 at 10.  While the clear weight of authority supported this conclusion, the Court did locate one Federal Claims Court case supporting Bell's argument that a new copyright violation accrued every time a user accessed the post, and OCPP did not cite any controlling authority to the contrary.  *Id.* at 9 n.3.  Accordingly, Bell's position was neither meritorious nor frivolous and this factor is neutral.

### 3.  Objective Unreasonableness

OCPP argues that Bell's prosecution of his copyright claim was objectively unreasonable because it was based on a false statement in his complaint intended to evade the statute of limitations.  ECF No. 68 at 14.  This argument, however, ignores the separate-accrual argument discussed above, which the Court has held was not frivolous.  Accordingly, while the Court did not find Bell's factual or legal arguments on this front persuasive, they were not objectively unreasonable.

### 4.  Motivation

"The existence of bad faith or an improper motive in bringing or pursuing an action weighs in favor of an award of fees to a prevailing party."  *Phoenix Techs. Ltd. v. VMware, Inc.*, No. 15-cv-01414-HSG, 2018 WL 828030, at *8 (N.D. Cal. Feb. 12, 2018) (quoting *Epikhin*, 2016 WL 1258690, at *6).  "Such a finding may be based on actions that led to the lawsuit, as well as on the conduct of the litigation."  *Id.* (internal quotation marks and citation omitted).  Courts have found bad faith where the "plaintiff continued to seek discovery after summary judgment was adjudicated and filed numerous complaints against defendant with state and county agencies, even after the agencies clearly indicated the complaints were meritless," *Epikhin*, 2016 WL 1258690, at

4

United States District Court
Northern District of California

*7 (citing *Frost-Tsuji Architects v. Highway Inn, Inc.*, CIVIL NO. 13-00496 SOM/BMK, 2015 WL 5601853, at *7 (D. Haw. Sept. 23, 2015)), and improper motive where the plaintiff had "only asserted copyrights as a tax [write-]off, submitted inadequate takedown notices even after numerous admonitions, and had never taken any steps to avoid copyright piracy," *id.* (citing *Perfect 10, Inc. v. Giganews, Inc.*, No. CV 11-07098-AB (SHx), 2015 WL 1746484, at *9-10 (C.D. Cal. Mar. 24, 2015)).  A motive is not improper simply because it is pecuniary.  *Phoenix Techs.*, 2018 WL 828030, at *8.

OCPP argues that Bell was improperly motivated by "forc[ing] OCPP to choose between spending money to defend this case or paying" Bell off in a "disproportionate settlement[]."  ECF No. 68 at 14-15.  OCPP cites Bell's demand letter, which requested $25,000 "in exchange for releasing [OCPP] from liability."  ECF No. 68-15 at 5.  OCPP also cites a letter in which Bell's counsel informed OCPP's counsel that "[i]f your client has a commercial liability insurance policy . . . you may be able to turn this dispute over to the insurance carrier for negotiation of a settlement.  Our client has successfully negotiated settlement agreements with insurance representatives that have resulted in mutually agreed upon settlement payments and releases of liability for the insured."  ECF No. 68-16 at 3.  OCPP's counsel declares that the attorney who sent him the above letter also "explained to me that he was focusing on swim teams because he believed that they had insurance coverage that would provide a defense to Plaintiff's claims."  ECF No. 68-14 ¶ 5.

OCPP also points to similar litigation in Utah, claiming that Bell's approach in that case "mirrors" his approach here.  ECF No. 68 at 15.  In support, OCPP cites the settlement agreement in *Bell v. Granite School District*, No. 19-cv-209 (D. Utah), which it obtained via Utah's public records law.  ECF No. 68-11 at 6.  In that case, Bell alleged that school employees had infringed on his copyright by reading an excerpt of *Winning Isn't Normal* at a football awards banquet and on his trademark by giving football players t-shirts that read "Winning Isn't Normal."  *Id.*  After the school district filed an answer and counterclaim, the case settled for $600 and an agreement that the school district would refrain from using Bell's phrase going forward.  *Id.* at 6-7.

OCPP argues that *Granite School District* and the instant case are representative of Bell's

general litigation strategy, which "appears to be to demand an immediate settlement, from an insurance carrier, for an amount that is just cheap enough to discourage the defendant from mounting a fair use defense." ECF No. 68 at 15. OCPP characterizes Bell as a "professional litigant" who has filed more than 26 copyright infringement lawsuits since 2006[3] and obtained settlements from at least 90 different alleged infringers, all relating to the WIN Passage. ECF No. 68 at 15. Bell does not rebut these allegations, arguing that he is "a successful author who has seen his exclusive rights under the Copyright Act infringed upon by a multitude of parties," ECF No. 69 at 6, and that, given "the uncertainties involved in litigation and the lack of complete information at the outset of every case," the fact that he has settled many of these cases should not be held against him, *id.* at 10.

The fact that a copyright is frequently infringed does not invalidate its holder's attempts to enforce it. Nor does a copyright plaintiff's desire to obtain compensation for their work render their motive in bringing an infringement claim improper. *See Phoenix Techs.*, 2018 WL 828030, at *8. The issue here is not that Bell regularly seeks to enforce his copyright but that he seeks a disproportionate amount to settle his claims, suggesting that he "is in the business of litigation, not protecting [his] copyrights or 'stimulat[ing] artistic creativity for the general public good.'" *See Perfect 10*, 2015 WL 1746484, at *9 (quoting *Fogerty*, 510 U.S. at 527). OCPP presents un-rebutted evidence that Bell's settlements "do not reflect the market value of a licensing agreement for the WIN Passage between two willing parties" but rather "the cost of litigation." ECF No. 57-6 at 15. OCPP cites its expert report, originally filed in support of its summary judgment motion, which estimated a reasonable licensing rate for "electronic posting of a short passage from a best-selling sociology book to an audience of 39 members," which is how many Twitter users followed OCPP's account at the time of the post, at $12.83. *Id.* at 17; *see also* ECF No. 68 at 16. Bell did not rebut this estimate on summary judgment and does not do so here. *See* ECF Nos. 60, 69. Compared to this negligible estimated value, Bell's original demand of $25,000 borders on the extortionate.

---

[3] A quick Bloomberg Law docket search produces 24 copyright and trademark actions filed by Bell since 2017, many of them against public schools.

1    Leveling exorbitant settlement demands at nonprofits and public schools does not advance

2    the purposes of the Copyright Act.  *See AF Holdings LLC v. Navasca*, No. C-12-2396 EMC, 2013

3    WL 3815677, at *2 (N.D. Cal. July 22, 2013) (finding improper motive where plaintiff "does not

4    appear to have been motivated to file suit in order to protect the copyrighted work at issue" but

5    rather "to coerce settlements").  Accordingly, the Court finds that this factor weighs in favor of

6    fee-shifting.  *See Perfect 10*, 2015 WL 1746484, at *9-11 (finding improper motive where plaintiff

7    had filed 20 to 30 copyright infringement suits and settled or obtained default judgments in all of

8    them).

9    This conclusion is bolstered by Bell's conduct during this litigation, which suggests bad

10    faith.  In addition to delaying the litigation by refusing to appear for a deposition in the Northern

11    District of California – his choice of forum – without a Court order, *see* ECF Nos. 32, 34, and

12    substituting counsel who was not admitted to the local bar, *see* ECF Nos. 46, 50, Bell appears to

13    have either intentionally included a false statement in his complaint or failed to comply with his

14    Rule 11 duty to investigate the factual basis for his claims.  *See* Fed. R. Civ. P. 11(b) ("[b]y

15    presenting to the court a pleading, written motion, or other paper . . . an attorney or unrepresented

16    party certifies that to the best of the person's knowledge, information, and belief, formed after an

17    inquiry reasonable under the circumstances . . . the factual contentions have evidentiary support or,

18    if specifically so identified, will likely have evidentiary support after a reasonable opportunity for

19    further investigation or discovery").

20    It is uncontested that Gimbutis posted the passage from Bell's book to OCPP's Twitter

21    feed on or about December 23, 2015, that Bell discovered it in January 2016, and that Gimbutis

22    deleted it from OCPP's Twitter feed on May 4, 2017, in response to a cease-and-desist letter from

23    Bell.  *See* ECF No. 65 at 2-3.  Bell's complaint, however, alleges that "[a]t least as late as

24    February 19, 2018, Defendant's posting of the WIN Passage remained on its Twitter page."  ECF

25    No. 1 ¶ 25.  In response to OCPP's interrogatory requesting all facts supporting this allegation,

26    Bell pointed OCPP to its entire document production of more than 800 pages, citing no specific

27    support.  ECF No. 57-4 at 5.  In a supplemental response, Bell supplied a screenshot of an entry

28    from archive.today, a website that archives internet content, dated March 28, 2016.  ECF No. 57-4

United States District Court
Northern District of California

at 5; ECF No. 61-2 at 2 (bearing same Bates stamp identified in supplemental response).  At his deposition, Bell testified that he "assume[d]" the 2016 date of this document was the date the website had been archived but did not know because he had not archived it or investigated who did.  ECF No. 57-3 at 6-7.  Bell has cited no other support for his allegation that the tweet was online as late as February 2018, including in his opposition to this motion.

In support of its request for fees, OCPP submits a Rule 11 motion that it prepared but did not file, *see* ECF No. 68-1 ¶ 10; ECF No. 68-7, and asserts that "[s]hortly after [OCPP sent the motion to Bell's counsel], a number of Plaintiff's counsel moved to withdraw from the case," ECF No. 68-1 ¶ 11.  The Court will not consider a motion that was not filed on the docket and to which Bell did not have a chance to respond, nor will it speculate as to the motivations of the counsel who withdrew.  Additionally, the Court has already held that, on summary judgment, Bell advanced a non-frivolous argument as to why his copyright claim was timely.  However, his apparent failure to investigate a statement in his complaint – one that surely affected OCPP's litigation strategy and potentially extended the duration of this case – creates a suggestion of bad faith that, in combination with Bell's apparent motive to extract a disproportionate settlement, weighs in favor of granting the motion for fees.  *Cf. AF Holdings*, 2013 WL 3815677, at *2 (finding that motivation factor weighed in favor of fee-shifting partly because "the factual investigation done by [plaintiff] prior to identifying [defendant] as the alleged infringer was inadequate").

### 5.   Compensation and Deterrence

As Bell points out, when evaluating the compensation and deterrence factor "in the context of a successful defendant, courts must be careful not to 'discourage starving artists from defending copyrights in original works due to the threat of attorney's fees.'"  *Perfect 10*, 2015 WL 1746484, at *12 (internal quotation marks omitted) (quoting *Brod v. Gen. Publ'g Grp., Inc.*, 32 F. App'x 231, 236 (9th Cir. 2002)); *see also* ECF No. 69 at 11.  Given the Court's finding that Bell is motivated by the desire to extract disproportionate settlements from entities like OCPP, however, it is clear that neither he, nor anyone pursuing a similar strategy, is a "starving artist" whose legitimate enforcement efforts would be deterred by an award of fees.  Accordingly, this factor

1    weighs in favor of fee-shifting.  *See Perfect 10*, 2015 WL 1746484, at *12 ("In light of

2    [plaintiff's] well-documented improper motive in bringing suit . . . the Court has little concern that

3    an award of attorneys' fees in this action will discourage 'starving artists' from protecting their

4    copyrights.  If anything, it will discourage serial litigants from bringing unmeritorious suits and

5    then unnecessarily driving up litigation costs in order to drive a settlement."); *AF Holdings*, 2013

6    WL 3815677, at *3 ("[T]here is a strong argument in favor of awarding fees as a deterrent, both

7    with respect to [plaintiff] and other persons or entities that might contemplate a similar business

8    model that is not intended to protect copyrighted work but instead designed to generate revenues

9    through suits and coerced settlements.").

10          For these reasons, the Court will award OCPP fees as to Bell's copyright claim.

11   **IV.    LANHAM ACT FEES**

12          **A.    Legal Standard**

13          Section 35(a) of the Lanham Act provides that "[t]he court in exceptional cases may award

14   reasonable attorney fees to the prevailing party."  15 U.S.C. § 1117(a).  "[D]istrict courts

15   analyzing a request for fees under the Lanham Act should examine the 'totality of the

16   circumstances' to determine if the case was exceptional . . . ."  *SunEarth, Inc. v. Sun Earth Solar*

17   *Power Co., Ltd.*, 839 F.3d 1179, 1181 (9th Cir. 2016) (en banc) (per curiam) (quoting *Octane*

18   *Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014)); *see also Stephen W.*

19   *Boney, Inc. v. Boney Servs., Inc.*, 127 F.3d 821, 826-27 (9th Cir. 1997) (holding that same

20   standard "applies to both prevailing plaintiffs and prevailing defendants seeking attorney's fees

21   under the Lanham Act," though *SunEarth* went on to alter the standard).  Courts evaluating the

22   propriety of fees under the Lanham Act should look to a "nonexclusive list of factors, including

23   frivolousness, motivation, objective unreasonableness (both in the factual and legal components of

24   the case) and the need in particular circumstances to advance considerations of compensation and

25   deterrence."  *SunEarth*, 839 F.3d at 1181 (internal quotation marks omitted) (quoting *Octane*

26   *Fitness*, 572 U.S. at 554 n.6).  The party seeking fees bears the burden to show entitlement by a

27   preponderance of the evidence.  *Id.*

28          "Once a prevailing party establishes its right to recover fees, the district court must

United States District Court
Northern District of California

1   determine whether the amount requested is reasonable." *Sazerac Co., Inc. v. Fetzer Vineyards,*

2   *Inc.*, No. 3:15-cv-04618-WHO, 2017 WL 6059271, at *3 (N.D. Cal. Dec. 7, 2017) (citing 15

3   U.S.C. § 1117(a) and *Hensley*, 461 U.S. at 437).  This inquiry is guided by the same lodestar

4   approach described above in the Copyright Act context.  *See Transgo*, 768 F.2d at 1027 (citing

5   *Hensley*, 461 U.S. at 433, for "factors to be considered in awarding a 'reasonable' attorney's fee

6   pursuant to a statutory command").

7          **B.      Discussion**

8          For the reasons discussed above, the motivation and compensation/deterrence factors both

9   weigh in favor of fee-shifting under the Lanham Act.  Unlike the Copyright Act analysis, the

10  Court also finds that the frivolousness and objective unreasonableness factors also weigh in favor

11  of granting the motion for fees under the Lanham Act.

12         On summary judgment, the Court held that Bell had not met his burden to show that OCPP

13  had used his trademarked phrase "in connection with a commercial transaction in which the

14  trademark is being used to confuse potential consumers," ECF No. 65 at 11 (citing *Bosley Med.*

15  *Inst. v. Kremer*, 403 F.3d 672, 676 (9th Cir. 2005)), because he had "presented no evidence that

16  [OCPP] offers *any* competing product or service, much less one that poses a likelihood of

17  confusion with Bell's own goods or services," *id.* at 12.  Bell now argues that "[m]ere failure of

18  proof on a claim or lack of success in a lawsuit is not sufficient to warrant a finding that a case is

19  exceptional" under Section 35(a) of the Lanham Act.  ECF No. 69 at 7-8 (quoting *Caiz v. Roberts*,

20  CV No. 15-09044-RSWL-AGRx, 2017 WL 830386, at *5 (C.D. Cal. Mar. 2, 2017)).  In *Caiz*,

21  however, the plaintiff had presented evidence and made "good faith arguments" to rebut one of the

22  defendant's defenses.  2017 WL 830386, at *5.  While the court ultimately did not find that

23  evidence persuasive, it did not conclude "that it was frivolous or objectively unreasonable for

24  [p]laintiff to pursue th[e] litigation."  *Id.*

25         Bell, by contrast, presented no admissible evidence that OCPP had used his trademark in

26  commerce, one of the necessary elements of a trademark infringement claim.  ECF No. 65 at 11.

27  The only evidence he cited for this element was a single screenshot from his website, dated more

28  than a year after the alleged infringement, that mentioned that Bell offered services including

"accompanying . . . individuals or teams to competitions" and "W.I.N. Swim Events." *Id.* at 12. While the Court denied judicial notice of this screenshot, it noted that no reasonable jury could have concluded that the screenshot showed that Bell and OCPP offered competing goods or services, as required to show commercial use. *Id.* at 13.  Accordingly, this is not a case where the losing party "raised debatable issues," as Bell claims.  *See* ECF No. 69 at 8 (quoting *Sophia & Chloe, Inc. v. Brighton Collectibles, Inc.*, No. 12-CV-2472-AJB-KSC, 2019 WL 1429588, at *8 (S.D. Cal. Mar. 29, 2019)).  Rather, the utter lack of support or reasonable argument for a foundational element of Bell's trademark claim, combined with his suspect motive and the need for deterrence discussed above, renders this case exceptional under the Lanham Act.  *SunEarth*, 839 F.3d at 1180 ("[A]n exceptional case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." (internal quotation marks omitted) (quoting *Octane Fitness*, 572 U.S. at 554)).

The Court will thus award fees to OCPP on the trademark claim as well.

## V.    FEE AMOUNT

OCPP seeks $120,000 in fees and $2,264 in costs.  ECF No. 68 at 18; ECF No. 67 (bill of costs).  OCPP has been represented pro bono in this litigation by Squire Patton Boggs ("SPB"). ECF No. 68-1 ¶ 15.  Rafael M. Langer-Osuna provides a declaration stating that SPB spent 345.67 hours litigating the case.  *Id.*  At rates from $350 to $925, the lodestar is $170,625.35.  ECF No. 68-14 ¶ 6; 68-1 ¶ 15.  OCPP supports its fee request with detailed time records reflecting SPB's work on preparing an answer, conducting written discovery, deposing Bell, commissioning an expert report, preparing the unfiled Rule 11 motion, and litigating the summary judgment motions, among other tasks.  *See* ECF No. 68-9.  The amount OCPP requests reflects a discount of more than $50,000 off this figure to account for the "relative lack of complexity of the case," ECF No. 68 at 18, and the fact that SPB "took advantage of this case to train attorneys" and thus would not have billed a paying client for certain hours.  ECF No. 68-1 ¶ 16.

Bell makes four principal arguments in opposition to the amount of fees requested:  (1) he contends that the "hourly rates claimed are excessive in relation to the relevant market rate," ECF

No. 69 at 12; (2) he argues that "it is inequitable to award attorney's fees for the time expended after Dr. Bell offered to settle, without payment of fees, on December 6, 2019," *id.* at 15; (3) he quarrels with OCPP's counsel billing "approximately 57.5 hours . . . for preparing and deposing Dr. Bell," *id.*; and (4) he complains that "Defendant claims approximately 21.2 hours of billed time for preparing a Rule 11 motion that was not filed and was not necessary," *Id.* He does not address whether the approximately 30 percent reduction in fees proposed by OCPP might be adequate by itself to address these deficiencies.

The Court finds that SPB's hourly rates are reasonable, with one exception. Partner Joseph Meckes billed 46.50 hours at a total cost of $42,090, for an average billable rate of approximately $905. 68-1 ¶ 20. That rate is too high for a case of this kind. The Court recognizes that a defendant facing a plaintiff whose strategy depends on using threatened litigation costs to coerce a settlement should be able to litigate fully instead of buckling under, and that such a defendant should be able to hire a lawyer sufficiently competent to vindicate its interests, at the market price for that lawyer's services. Even considering this factor, however, an hourly rate of $905 is simply too high for a case of this complexity. "In determining a reasonable hourly rate, the district court should be guided by the rate prevailing in the community for *similar* work performed by attorneys of comparable skill, experience, and reputation." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210-11 (9th Cir. 1986) (emphasis added) (citing *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)), *amended on denial of reh'g*, 808 F.2d 1373 (9th Cir. 1987). Moreover, putting the question of Meckes's rate to one side, Defendant has not demonstrated that the case required the services of two partners, or that Langer-Osuna could not have performed the tasks Meckes performed. The Court may reduce attorney hours where the case was overstaffed or hours were duplicated. *Chalmers*, 796 F.2d at 1210. The Court will therefore deduct Meckes's time from the attorney's fees request. In all other respects, the Court approves the rates charged by Defendant's attorneys and finds them within the market rate for this federal district.

Bell's argument that "it is inequitable to award attorney's fees for the time expended after Dr. Bell offered to settle" is less persuasive. ECF No. 69 at 15. As set forth above, the equities in this case clearly indicate that OCPP was entitled to an award of its fees. Viewed in that light,

United States District Court
Northern District of California

1    OCPP was under no obligation to accept an offer that did not include the attorney's fees to which

2    it would be entitled if it prevailed.  Had Bell really wanted to cut his losses, he would have

3    addressed the issue of fees in his offer.  Nor does the Court understand why Bell thinks OCPP's

4    counsel should not have spent 57.5 hours preparing for Bell's deposition.  Bell does not say why

5    that number is excessive or what a more appropriate number might have been.  These objections

6    are overruled.

7         OCPP does not respond to Bell's objection to paying for OCPP's unfiled Rule 11 motion,

8    and the Court concludes the objection has merit.  The Court will reduce the attorney's fees award

9    by $8,488.50 to reflect the 21.2 hours spent on this motion.

10        OCPP's counsel billed $170,625.35 in attorney's fees.  68-1 ¶ 15.  To account for the

11   foregoing objections, the Court reduces this amount by the $42,090 billed by partner Joseph

12   Meckes and the $8,488.50 billed for the Rule 11 motion, for a total of $120,046.85.  Having made

13   these reductions and addressed each of Bell's specific objections, the Court sees no need to reduce

14   the award further.  The Court also awards $2,054.80 in costs, *see* ECF No. 71 (costs taxed), which

15   Bell does not contest.  The total award is $122,101.65.

                                      **CONCLUSION**

17        For the foregoing reasons, the Court GRANTS the motion for attorney's fees and costs.

18        **IT IS SO ORDERED.**

19   Dated:  October 14, 2020

                                      _____
                                      JON S. TIGAR
                                      United States District Judge

United States District Court
Northern District of California

13